Carmine GALANTE, Petitioner,

v.

The UNITED STATES PAROLE COMMISSION, Respondent.

Civ. No. B–78–414.

United States District Court, D. Connecticut.

Feb. 27, 1979.

Paul S. Sherbacow, Hartford, Conn., Roy Cohn, pro hac vice, Michael Rosen, pro hac vice, Saxe, Bacon & Bolan, New York City, for petitioner.

Richard Blumenthal, U. S. Atty., Hugh W. Cuthbertson, Asst. U. S. Atty., Harold James Pickerstein, Chief Asst. U. S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

DALY, District Judge.

Carmine Galante brings this petition for a writ of habeas corpus alleging constitutional deficiencies in the Parole Commission's actions concerning his parole status.[1] The operative events are as follows: (1) the revocation of petitioner's parole in April of 1978 and the establishment of June 14, 1978 as the new parole release date; and (2) the retardation on June 13, 1978 of that release date leading to rescission of his parole in August with continuation of his incarceration until the expiration of his original sentence in 1982.

Petitioner first challenges the constitutionality of the hearing leading to revocation. In April of 1978, the Commission revoked petitioner's parole on the ground that he had associated with known criminals in violation of mandatory release condition number ten.[2] At the hearing, petitioner raised as a defense that he had never been informed and had no knowledge of the condition.[3] In rejecting this claim, the Commission relied virtually exclusively upon a notation on petitioner's Certificate of Mandatory Release, purportedly signed by Harvey Cox, a prison caseworker, which stated that petitioner had been informed of the mandatory release conditions.[4] The Commission refused to produce Cox at the hearing despite petitioner's demand.[5]

■ Petitioner contends that the preclusion of Cox violated the mandate of the

1. In 1962, petitioner received a twenty year sentence for a narcotics conspiracy conviction. He was mandatorily released and placed upon parole after serving twelve years of the sentence.

2. The Examining Panel found that petitioner violated mandatory release condition number ten, revoked his parole, and continued him to expiration. On April 11, 1978, the full Commission, after reviewing the decision on appeal, pursuant to 28 C.F.R. § 2.27, agreed with the panel's decision to revoke but substantially reduced the penalty by setting June 14, 1978 as the new parole release date.

Mandatory Release Condition number ten reads: "You shall not associate with persons who have a criminal record unless you have permission of your probation officer." 28 C.F.R. § 2.40(10).

3. At the hearing, petitioner advanced two arguments in support of his defense. First, he claimed that he was never informed of the condition and is not chargeable because his signature does not appear on the Mandatory Release Certificate on which prisoners at the time of release normally attest to knowledge of the mandatory release conditions. Second, he contended that if he had knowledge of condition number ten it would have been irrational for him to associate with known criminals, thereby jeopardizing his parole, in view of his awareness of the constant police surveillance to which he was subject.

4. The typewritten notation read: "The conditions of this certificate were thoroughly explained to Carmine Galante, and he refused to sign. He was advised that if he failed to comply with these conditions, he would be considered a Mandatory Release Violator."

Petitioner testified that his only recollection of conversations with Cox concerned payment of a committed fine. United States Parole Commission Revocation Hearing Summary at 4, (June 23, 1978). [Hereinafter Revoc.Hear. Sum.].

5. Counsel for petitioner on two occasions, at a prehearing conference and during the revocation proceeding itself, requested that Cox be present to testify as to his notation on the Certificate of Mandatory Release. The Examining Panel denied the request, stating in a conclusory fashion that,

[T]he notation by Mr. Cox is a routine one and there does not appear to be any justification for his presence at this hearing today . . . . Furthermore, the record of this case would reveal that various probation officers had advised Mr. Galante of the conditions of his mandatory release during his supervision.

Id.

However, contrary to the examiners' expectations, all four of petitioner's supervising probation officers testified that they had not informed petitioner of the mandatory release conditions. Id. at 24-26.

Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In that case, Chief Justice Burger set forth the minimum due process protections required at a revocation hearing, and stated that the parolee must have "the right to confront and cross examine adverse witnesses." *Id.* at 489, 92 S.Ct. at 2604.[6] Petitioner argues that under *Morrissey,* cross examination of Cox is imperative since the notation was the only evidence indicating petitioner had been informed of the condition and because the Commission relied primarily on it to find petitioner had knowledge.[7]

In response, the Commission argues that the right to confront adverse witnesses is conditional and does not apply in this instance. The Commission advances two alternative arguments in support of this contention. First, it maintains that Cox's testimony was irrelevant because proof of knowledge of a specific mandatory release condition is not necessarily a condition precedent to finding a violation of that condition. However, the Commission, in evaluating the charges against petitioner, specifically considered whether petitioner knew of condition number ten and there appeared to be no question that the issue was materially relevant to their ultimate determination.[8]

Alternatively, the Commission contends that even if the matter is deemed relevant, the preclusion of Cox constitutes only harmless error in that ample evidence, besides the Cox notation, existed to establish petitioner's awareness of the condition. Except for the inferences assertedly drawn from petitioner's own actions,[9] however, the

**6.** It should be noted that the Chief Justice states that an exception to the right of cross examination exists when good cause is shown. At this point in the decision, he does not further define the exception. However, in the discussion of the probable cause hearing the Chief Justice defines good cause as a specific finding that, if disclosed, the witness would be subject to risk of harm. And since he states that the revocation hearing must be the basis for more than a probable cause determination, this Court in line with the concurrence believes that good cause is defined by the standard specifically delineated with reference to the probable cause hearing. *See Birzon v. King,* 469 F.2d 1241, 1244 (2d Cir. 1972).

**7.** In his opening statement at the revocation hearing, counsel for petitioner also stated that the Commission's own confusion concerning who had informed the petitioner of the conditions justified the production of Cox. He maintained that the U.S. Probation Office had informed him that one J. K. Boen, Chief, Classification & Parole, had explained the conditions of mandatory release to petitioner. Subsequently, counsel discovered that Cox, not Boen, purportedly had explained the conditions. *Id.* at 5.

**8.** The Commission contends that, notwithstanding its actions at the time of the hearing, the Second Circuit has indicated that knowledge of the existence of a condition is not a relevant consideration and, therefore, failure to permit full inquiry by petitioner does not rise to a constitutional violation. *See U. S. v. Albanese,* 554 F.2d 543 (1977); *Birzon v. King,* 469 F.2d 1241 (1972). In the cases cited above, however, the court addressed only the issue of whether the wording of the predecessor to condition number ten was unconstitutionally vague. It did not consider the issue presented here since the court in both cases either specifically found or assumed that petitioner had knowledge of the existence of the condition in question. In fact, the 9th Circuit in *United States v. Dane,* 570 F.2d 840 (1970), addressing the same issue presented here stated that, "where the proscribed acts are not criminal, due process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for *those acts unless he is given prior fair warning.*" *Id.* at 844.

**9.** The Commission maintained that a reasonable assumption can be made that petitioner knew of the condition because he stated to his probation officer that he would not jeopardize parole by knowingly violating a mandatory release condition and because petitioner had demonstrated familiarity with six of the mandatory release conditions by affirmatively complying with them. In this regard, the Commission buttressed the assumption with the statement of Joel Moss, one of petitioner's probation officers, that he had cautioned petitioner about the possibility of being accused of criminal associations in connection with petitioner's involvement in a class action suit. Hear.Revoc. Sum. at 33. It seems equally reasonable to draw the converse inference that petitioner, having already served twelve years, would only jeopardize his parole by violating a mandatory release condition if he did not know of its existence. And the ambiguous warning of Officer Moss given in a wholly different context does not serve to reinforce the assumption which the Commission chose to make.

Commission relied exclusively on the Cox notation to find that petitioner had knowledge of the condition.[10]

■ The Commission nevertheless maintains that other evidence in the Hearing Summary indicates petitioner's awareness. Specifically, it points to petitioner's state parole violation in 1943 for criminal association and to petitioner's knowledge of the violation of Alfonso Indelicato, who had been violated for associating with petitioner.[11] Even if we assume that the Commission at this date properly can buttress the reasons for their finding in January of 1978, the evidence proffered is not sufficiently probative to permit this Court to conclude that the Cox notation was unnecessary to the Commission's ultimate determination.[12]

■ Based upon the Commission's own record, it is clear that petitioner's state of knowledge, raised in the context of his de-

fense to criminal association charges, was not only relevant but critical to the Commission's revocation decision. And Cox was the only person who allegedly had informed petitioner of the mandatory release condition in question. By refusing to permit cross examination of Cox, the Commission defeated the very purpose of *Morrissey*—to insure "a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* 408 U.S. at 488, 92 S.Ct. at 2603.[13] The Commission's failure to meet the minimum due process standards applicable to revocation proceedings rendered the January hearing void.

■ The Commission's decision on June 13, 1978 to retard petitioner's release date of June 14 and its consequent hearing leading to rescission must be viewed in the

---

10. The panel stated:
    First, the panel believes that the conditions of mandatory release were "thoroughly explained" to Mr. Galante prior to his release from the U.S. Penitentiary in Atlanta on January 24, 1974 by his then case manager Harvey Cox . . . . Based upon the panel's knowledge of Bureau of Prisons procedure and citation by Mr. Cox on the mandatory release certificate, the panel concludes that the conditions of mandatory release, including condition number ten prohibiting association, were explained to Mr. Galante prior to his release from federal prison.
    *Id.* at 33.

11. The panel in their Hearing Summary alluded to the state probation violation on three separate occasions but they never cited it specifically as support for their determination concerning petitioner's knowledge of condition number ten. The panel first noted the violation in substantiating the charge that petitioner had associated with one Joseph DePalermo who was the same person that the state authorities had deemed that petitioner had associated with in 1943. *Id.* at 9.
    Secondly, the panel in discussing "Community Resource & Parole Risk" merely set forth petitioner's own mitigating reasons for the state violation. *Id.* at 31.
    Third, in evaluating the basis of the panel's recommendation, the panel lists on the "negative scale" his 1943 violation to support their observation that the petitioner has a propensity for this kind of violative behavior. *Id.* at 34. The only allusion to petitioner's association with Indelicato occurs during the opening remarks of petitioner's counsel. Petitioner's

counsel stated that there were no live witnesses at Indelicato's state parole revocation and that the violation was deemed technical and Indelicato restored to supervision forthwith. *Id* at 8.

12. Finally, the Commission argues that even if the failure to produce Cox was in error, it remedied the deficiency by making Cox available for questioning by petitioner's counsel before the full Commission considered the revocation decision on appeal. Even assuming that constitutional error can be corrected in this manner, there is no indication that Cox was subject to cross examination then or that the Commission considered the interview in their final deliberations. In fact, in the affidavit executed by Cox and submitted to this Court, he stated that "while I remember Mr. Galante as a prisoner, I have no specific recollection of advising Mr. Galante of his conditions of mandatory release. However, I also informed Mr. Lamb that I recognized my signature, and *if* I had signed my name to the typed declaration on the Mandatory Release Certificate, . . . [I was positive that] I had thoroughly explained the conditions of release to Mr. Galante." [emphasis added] Cox Affidavit (Dec. 5, 1978). The affidavit serves only to demonstrate the need for cross examination.

13. The good cause exception to the right to cross examine is inapposite here since the Commission has never claimed that Cox would be jeopardized by appearing as a witness and it, in fact, disclosed Cox's identity to petitioner before the hearing. *See* note 6, *supra.*

context of the constitutionally deficient revocation procedure.[14] Retardation and rescission are only available to the Commission if the petitioner is or should be properly incarcerated. *See* 28 C.F.R. § 2.34(b). Since petitioner was not legitimately incarcerated on June 13, retardation and rescission were not the prescribed method for commencing and adjudicating the new charges against petitioner.[15] Nevertheless, it is this Court's view that the rescission decision should remain in force if the Commission afforded the petitioner the constitutional safeguards applicable at a revocation proceeding.[16]

Petitioner contends, however, that the hearing leading to rescission failed to meet the *Morrissey* requirements. The key and only relevant government witness at the rescission hearing was James Gannon, one of petitioner's supervising probation officers. According to the Commission, Gan-

---

14. On June 13 of that year, three of the Commissioners, pursuant to 28 C.F.R. § 2.28 & 2.34(b), voted to reopen petitioner's case, retard his release date, and schedule a rescission hearing on the grounds that the testimony of one of the probation officers at the revocation hearing "may have been tainted," and that the petitioner "may have participated in the corruption of a public official . . ." Notice of Action (June 13, 1978).

The retardation of petitioner's parole was precipitated by a letter to the Parole Commission from the Chief Probation Officer of the Southern District requesting the Commission to reopen petitioner's case based upon information concerning the possible corruption by petitioner of James Gannon, one of petitioner's supervising probation officers who had testified at the January revocation. *See* note 5, *supra.* Regional Commissioner Nardoza, however, declined to reopen the case because "the correspondence from the U.S. Probation Office does not contain sufficient information to sustain a recission of the parole grant," and requested "additional evidence or information." Letter to U.S. Attorney Robert Fiske (dated May 24, 1978). On June 7, 1978, the Commissioner was informed that no additional information was available. Affidavit of H. Sadowski, Regional Att'y, U.S. Parole Comm'n. at 4 (Dec. 5, 1978). According to the affidavit of the Commission's Regional Counsel for the Northeast region, the receipt by the Commission of a copy of an indictment charging four defendants with conspiracy to corrupt Gannon provided the Commission with the additional information to reopen and retard. Sadowski affidavit at 4. Ironically, petitioner was not one of the persons indicted or otherwise named and the defendants were later acquitted of the charges. Subsequently, the Commission held a rescission hearing concerning the charges. The presiding hearing examiners divided on the issue of whether to rescind and the administrative hearing examiner pursuant to 28 C.F.R. § 2.23(b) cast the deciding vote in favor of rescission with continuation of sentence until expiration. After designating the case one of original jurisdiction pursuant to 28 C.F.R. § 2.17(c)(1), the Regional Commissioner agreed with the panel's decision and forwarded the case for review to the National Commissioners. A concurrence of three commissioners was necessary for an official decision. While the three Commissioners, reviewing the case, agreed to rescind petitioner's parole date, they could not agree concerning the period of incarceration petitioner should serve, although one Commissioner concurred with the recommendation of the Northeast Regional Commissioner. Thus, a fourth Commissioner considered the case and cast the deciding vote for continuation until expiration on the ground that petitioner had corrupted a public official. On August 8, 1978, the full Commission, on appeal, affirmed both the decision to rescind and the penalty. Notice of Action (July 31, 1978).

15. In *Galante v. Warden, MCC,* 447 F.Supp. 64 (S.D.N.Y.1978) petitioner had challenged the validity of the retardation. Judge Sweet upheld the Commission's action but apparently did not consider it within the context of an unconstitutional revocation proceeding. As a result of the deficiency in the revocation hearing, the Commission was obligated to utilize revocation procedures, filing a mandatory release violator warrant and holding a probable cause hearing, to adjudicate the charges against petitioner.

16. Commissioner Nardoza specifically instructed the Examining Panel at the June hearing to conduct it as a revocation hearing. The directive was promulgated because the Commissioner perceived that the hearing was a reopening of the January revocation hearing and involved petitioner's conduct while on parole, the appropriate revocation situation. *See* Nardoza Memo, (June 23, 1978).

Although the constitutional gap between parole rescission and revocation recently has been narrowed, the due process protections mandated at a revocation hearing are more extensive than those applicable in parole rescission situations because the parolee is actually free and, therefore, has a greater liberty interest. *See Drayton v. McCall,* 584 F.2d 1208 (2d Cir. 1978). The Commission now takes the position that the June hearing was actually a rescission hearing notwithstanding the Commissioner's directive.

non had been corrupted by petitioner and, in return, had extended preferential treatment to petitioner, including the giving of tainted testimony at the January revocation hearing concerning whether petitioner had been informed of the mandatory release conditions.[17] Despite an immunity grant, Gannon denied that he had bestowed these benefits on petitioner but did maintain that he "believed" that an unidentified individual named Jimmy, from whom he had accepted payment, was acting on behalf of petitioner. On cross examination, the hearing examiner in charge refused to permit petitioner's counsel to cross examine Gannon for impeachment purposes either about the conditions of his immunity grant or his possible involvement in past acts of corruption.[18]

■ Petitioner contends that the Commission unconstitutionally curtailed the cross examination of its key witness.[19] In rebuttal the Commission contends that the restricted areas of inquiry bore little relevance to the issue at hand. The Commission's position is untenable in view of the fact that Gannon was the only witness who testified concerning the allegation of corruption against petitioner and, therefore, his credibility was a critical issue at the June hearing. And the examiner failed to give any reasons for his rulings which could be construed as good cause.[20] Under *Morrissey*, petitioner should have been afforded

17. The fact that the Commission chose to reopen petitioner's case because Gannon's testimony regarding the issue of petitioner's knowledge was allegedly tainted undercuts its disclaimer of the relevancy of that issue to the revocation decision. *See* note 8, *supra* and accompanying text.

18. Transcript of Parole Rescission Hearing of Carmine Galante at 37, 42. (June 28, 1978).

19. Petitioner also alleges that the evidence presented at the hearing leading to rescission was insufficient to support the Commission's decision to rescind petitioner's parole and continue him to expiration. This Court finds no need to reach this issue at this time since the revocation procedures followed were constitutionally inadequate and rendered the hearing fatally defective. Nevertheless, regardless of whether the standard of proof applied is that of revocation or rescission, assuming a cognizable difference exists, it seems to this Court that the evidence presented at the June hearing fails to provide any reasonable basis for the Commission's conclusion that petitioner "in fact corrupted a public official." *See* note 14, *supra*. Gannon, the sole relevant government witness, "emphatically" denied either bending his testimony at the January hearing in favor of petitioner, (Tr. 24), or extending petitioner "any greater privilege than anybody else." (Tr. 23). In fact, Gannon's "belief" that Jimmy was acting on behalf of petitioner was the sole basis upon which the Commission concluded that petitioner was involved in this alleged scheme of corruption, even though he testified as well that petitioner's own actions belied this contention. He stated that petitioner never had indicated that he was extending payments through Jimmy even though the opportunity had presented itself, (Tr. 55), or that he had asked Gannon to act improperly on his behalf.

The only evidence of alleged preferential treatment was the result of inferences which the Commission chose to draw from two incidents. First, Gannon testified that he had visited a festival in Little Italy, New York, to warn Jimmy that a mandatory release violator warrant would be issued against petitioner. According to Gannon, he spotted petitioner and Jimmy at the festival and made eyeball contact with "him", whereupon Jimmy approached Gannon and received the information. The Commission chose to assume that Gannon's reference to "him" meant petitioner and thus found a direct link between petitioner and the payments made to Gannon. Notwithstanding the representations of petitioner's counsel that he was well aware of the pending warrant at the time and was arranging for petitioner's surrender or the representation of the presiding priest at the festival that it had not occurred during the dates in question, which were not part of the record before the Commission, this evidence hardly leads to the conclusion that petitioner corrupted a public official. The other incident which served as evidence of corruption occurred during Gannon's first meeting with petitioner. According to Gannon, he spotted Jimmy in the hall while he was speaking to petitioner. At oral argument counsel for the Commission mistakenly maintained that Jimmy and petitioner were actually together in the same room with Gannon which perhaps would have been more probative of the charges made. However, because two men were seen in the vicinity at a given time does not indicate the direct link found by the Commission. For the reasons stated, this Court views the evidence in the same manner as the dissenting hearing examiner—insufficient to support the conclusion ultimately made by the Commission.

20. *See* note 6, *supra*.

the meaningful opportunity on cross examination to probe the witness' credibility.[21]

For the reasons stated above, the writ of habeas corpus is granted.[22]

---

21. In fact even if this Court assumes that the Commission properly conducted a rescission hearing in June, restriction of cross examination violated the applicable procedural protections. In *Drayton v. McCall*, 584 F.2d 1208 (2d Cir. 1978), the Second Circuit followed the *Morrissey* rule and stated that an inmate has the right to confront and cross examine adverse witnesses where the witness will not be endangered by revealing his identity. As stated with respect to *Morrissey*, the exception to the right to cross examination does not apply in this instance.

22. Nothing in this opinion is to be construed as disturbing the original violator warrant which precipitated the January revocation hearing or the probable cause hearing thereon which formed the basis for that hearing. See 28 C.F.R. § 2.49(e)