**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**John Andrew DANE, Defendant-Appellant.**

**No. 76–2448.**

United States Court of Appeals, Ninth Circuit.

Dec. 2, 1977.

Rehearing and Rehearing En Banc Denied March 1, 1978.

Tom O'Toole, Federal Public Defender (argued), Phoenix, Ariz., for appellant.

Edmund G. Noyes, Jr., Asst. U. S. Atty. (argued), Phoenix, Ariz., for appellee.

Before GOODWIN and WALLACE, Circuit Judges, and INGRAM,* District Judge.

WALLACE, Circuit Judge:

Dane appeals the revocation of his probation. He argues that because he had no notice of the condition which he was alleged to have violated and because the acts leading to revocation were committed outside of the United States and violated no United States law, the district judge abused his discretion in revoking probation. We affirm.

* The Honorable William A. Ingram, United States District Judge for the Northern District of California, *sitting by designation.*

## I

On June 30, 1975, Dane pleaded guilty to a charge of possessing Claymore mines in violation of 26 U.S.C. §§ 5861(d), 5871. On August 25, 1975, Dane was sentenced to five years in prison, six months to be served in a jail-type institution with the remainder of the custodial sentence suspended and probation imposed. A few days after Dane was released from prison to begin his probation period, he petitioned the sentencing judge for permission to leave the country indefinitely on unsupervised probation. On October 16, 1975, permission was granted. Dane left the country for Great Britain in December 1975.

Dane was arrested on his return on May 6, 1976. He was charged with violating a special condition of his probation: that he "not trade, possess, or carry weapons, firearms, or explosives." At his revocation hearing, the sentencing judge found that Dane had violated this condition by handling weapons in Mexico, by having his personal weapons shipped to him from the United States, and by engaging in armed instruction in Rhodesia and handling arms there. There was no allegation that any of these activities were illegal under the laws of the United States or of any other country.

In pronouncing the split sentence in open court, the district judge did not verbally specify any conditions for the noncustodial period of probation. The signed judgment order provided for no special conditions of probation. The judgment imposed only standard conditions, printed on the back of the form.[1] Later, however, Dane's probation officer, Yaeger, showed Dane a copy of probation form number 7, the purpose of which is to provide notice to probationers of the conditions of their probation. This form included two special conditions of probation, including the no-weapons condition, as well as the standard conditions. Dane signed the form but, according to his testimony, he did not have time to read it because at that time he was being returned to custody. Yaeger's testimony could be considered conflicting as he did not believe that Dane had an opportunity to read the conditions "in depth." Yaeger could not remember whether Dane received a copy of the probation form.

However, Yaeger did explain the conditions to Dane on September 18, when Dane reported to the probation office after being released from prison. At that meeting, according to Yaeger, Yaeger expressed his concern about the firearms that Dane had kept (legally) at his house, explained that keeping them was a violation of his probation, and directed him to give them away. He also told Dane about a provision of the law which would allow him, after successfully completing probation, to petition a governmental agency for permission once again to own firearms.[2]

Dane's recollection of the meeting was substantially similar to Yaeger's. Dane testified, however, that he thought the discus-

1. Those instructions read:

Where probation has been ordered the defendant shall, during the period of probation, conduct himself as a law-abiding, industrious citizen and observe all conditions of probation prescribed by the court. TO THE DEFENDANT—You shall:

(1) refrain from violation of any law (federal, state, and local) and get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer;

(2) associate only with law-abiding persons and maintain reasonable hours;

(3) work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. (When out of work notify your probation officer at once, and consult him prior to job changes);

(4) not leave the judicial district without permission of the probation officer;

(5) notify your probation officer immediately of any change in your place of residence;

(6) follow the probation officer's instructions and report as directed.

The Court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period.

2. This is apparently a reference to 18 U.S.C. § 925(c).

sion pertained to the federal law which prohibits possession of firearms by a convicted felon.[3] He testified that he thought that the probation condition which would be violated by firearms possession was condition (1): "You shall . . . refrain from the violation of any law (federal, state, and local) . . . ." Dane also testified that he did not believe that the possession of weapons would be in violation of United States law once he was outside of the United States.

The district judge, who was in the best position to assess the testimony, did not accept Dane's rendition. He stated that Dane's "recollection of the events is certainly colored in his favor, to be charitable about it." At the same time, he accepted the testimony of Yaeger.

## II

Before we consider Dane's contentions, it will be helpful to analyze the applicable legal standard of review. In *Burns v. United States,* 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932), the Supreme Court held that the critical issue in probation revocation is "whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant." *Id.* at 221, 53 S.Ct. at 156. Within these limitations, the sentencing court has broad discretion in determining whether or not to revoke probation; its decision will be overturned only for an abuse of discretion. *Id.* at 221–23, 53 S.Ct. 154.[4]

Subsequent to *Burns,* the Court decided *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). There the Court held, by implication, that the probationer has a constitutionally protected liberty interest. *Id.* at 781–82, 93 S.Ct. 1756. Thus the probationer cannot be denied due process—despite certain statements in *Burns v. United States, supra,* 287 U.S. at 220, 223, 53 S.Ct. 154, and cases following *Burns, e. g., Escoe v. Zerbst,* 295 U.S. 490, 492, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), that probation is an "act of grace." *Gagnon v. Scarpelli, supra,* 411 U.S. at 782 n. 4, 93 S.Ct. 1756.

In *Gagnon,* the Court approved the use of discretion in probation revocation. *Id.* at 784, 785, 93 S.Ct. 1756. To this extent, *Burns* remains good law. Nevertheless, the revoking court's exercise of discretion must now be tempered with a proper regard for the due process rights of the probationer. This, of course, must be taken into account in reviewing the revocation decision.

## A.

Dane's assertion that he received no notice of the special condition which he was found to have violated raises the issue whether his probation was revoked without due process of law. It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation. *Cf. Gagnon v. Scarpelli, supra,* 411 U.S. 778, 93 S.Ct. 1756.

As a general matter, formal conditions of probation serve the purpose of giving notice of proscribed activities. But a formal condition is not essential for purposes of notice. Courts have sustained the

---

**3.** 18 U.S.C.App. § 1202(a)(1).

**4.** In our circuit, we have on several occasions followed the abuse of discretion test set out in *Burns. E. g., United States v. Lara,* 472 F.2d 128, 129 (9th Cir. 1972); *Trueblood Longknife v. United States,* 381 F.2d 17, 19 (9th Cir.), *cert. denied,* 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1967); *Brown v. United States,* 236 F.2d 253, 254 (9th Cir. 1956), *cert. denied,* 356 U.S. 922, 78 S.Ct. 705, 2 L.Ed.2d 716 (1958). Indeed, because the focus of review is on abuse of discretion rather than violation of conditions, we have held that where the nature of the probationer's acts warranted revocation within the guidelines set out in *Burns,* probation could be revoked even where no condition had been violated. *Trueblood Longknife v. United States, supra,* 381 F.2d at 20.

revocation of probation for criminal activity committed prior to the effective date of the conditions, *United States v. Ross,* 503 F.2d 940, 943 (5th Cir. 1974), or where the defendant was not aware of the conditions, *Tiitsman v. Black,* 536 F.2d 678, 681–82 (6th Cir. 1976). In such a case, knowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation. On the other hand, where the proscribed acts are not criminal, due process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for those acts unless he is given prior fair warning.[5] *Tiitsman v. Black, supra,* 536 F.2d at 682; *see United States v. Foster,* 500 F.2d 1241, 1244 (9th Cir. 1974); *cf. Bouie v. City of Columbia, supra,* 378 U.S. 347. Of course, where the warning is not contained in a formal condition, the record must be closely scrutinized to determine whether the defendant did, in fact, receive the requisite warning.

Here there were no allegations that Dane's acts constituted criminal activity. Thus, unless Dane received prior fair warning that those acts could lead to revocation, the court's decision to revoke violated the requirements of due process and was an abuse of discretion.

We need not reach the question whether Dane violated the special condition on probation form number 7 as explained by Yaeger on September 18. Leaving that issue aside, on the rather unique facts of this case, we find that Dane did receive sufficient prior notice. At the original sentencing proceeding, Dane was put on notice that the continuation of his former life as a mercenary soldier would lead to the revocation of probation. At that time, the district judge was informed by both Dane and his attorney of Dane's intention to make a home in Utah and rebuild his legitimate business there. The court was also informed of the large number of people in Utah who had faith in Dane and would help him re-establish himself. Thus, Dane gave the court reason to believe that he had abandoned the life of the mercenary. It is clear that Dane understood that a continuation of his former profession was unacceptable to the district judge.

The district judge gave support to this conclusion with his own remarks. Prior to imposing sentence, the district judge indicated that he felt very strongly about Dane's conduct with respect to weapons, killings and dealings in weapons.[6] In con-

---

**5.** Apart from the question of notice, there are limitations upon the discretion of the sentencing court in imposing restrictions concerning non-criminal acts. In *U. S. v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir. 1975) (en banc), we held that a condition cannot be imposed upon a probationer unless it is reasonably related to the purposes of the Probation Act, 18 U.S.C. §§ 3651 et seq. *Id.* at 262. In determining whether a reasonable relationship exists, it is necessary to give consideration to the purpose sought to be served by the Probation Act—i. e. rehabilitation of the probationer, the extent to which the full constitutional guarantees available to those not under probation should be accorded probationers, and the legitimate needs of law enforcement in protecting the public. *Id.* at 263–67. In *Consuelo,* we were concerned with the extent to which the sentencing court can impose formal conditions. However, the above considerations should also apply to restrictions which are not contained in formal conditions.

**6.** The district judge and Dane engaged in the following dialogue:

THE COURT: Do you realize what the dealing in firearms and the kind of materials you were dealing with could, in spite of the fact that you say you didn't want to sell it locally, there are a lot of people around today who are—I mean, the world is getting nuttier and nuttier, and there are a lot of people around today who are willing to resort to acts of terrorism and violence because they do not have the patience to work within our system.

MR. DANE: Yes, I understand it, sir.

THE COURT: There are bombings going on around the country, deaths are being caused, innocent people are being victimized. And these are very serious materials you are dealing in.

It seems to me that even if the materials were to go to some other country, they are still human beings, there are still people that buy the materials that you sold that can be killed, destroyed, literally.

MR. DANE: I am afraid the realization that any involvement in this country, that it might have had as you just explained, I'm afraid I didn't realize it at the time.

THE COURT: Well, people can tell you anything.

MR. DANE: Yes, that is true.

nection with Dane's own manifest understanding that he was to abandon his former profession of warrior for hire, the judge's remarks gave more than adequate warning that a return to the mercenary profession would be inconsistent with probation.

The permission given by the court for Dane to leave the country on unsupervised probation does not undermine the conclusion that there was fair notice because the court was never informed that Dane was leaving the country to return to soldiering. Dane suggests that because the district judge approved the request for travel authorization with full knowledge of the details of Dane's past soldiering activities and of his change of plans, he knew or should have known that Dane was likely to return to the mercenary life. Thus, it is contended, Dane had implicit permission to return to his former profession.

In light of the surrounding circumstances, we do not believe that Dane could reasonably have understood from the granting of the travel authorization that he was thereby licensed to return to soldiering. He represented to his probation officer and possibly to the court that he had legitimate business opportunities in several countries which he hoped to explore. Furthermore, there was nothing to indicate that the district judge had retracted his strong statement at the sentencing proceeding. Dane remained subject to the understanding that a return to the mercenary life was inconsistent with his probation.

At the revocation proceeding, the district judge stated that Dane violated the condition of probation in several respects. First, he handled firearms in Mexico in conjunction with a television show filmed there. Second, by his own admission at the revocation proceeding, he had his personal arms shipped to him from out of the United States. Third, he engaged in armed instruction in Rhodesia and handled arms there. All of the acts cited were aspects of Dane's return to the mercenary life. Thus, Dane had received prior fair warning that acts of this nature could lead to the revocation of probation.

### B.

Even if we accept that the acts cited by the court as the basis for revocation were committed outside the United States and violated no law of the United States, these acts still justified the revocation of probation.

The revocation decision must be made with regard to the two central concerns of the probation system—the successful rehabilitation of the probationer and the safety of the community. *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 264 (9th Cir. 1975) (en banc); *United States v. Winsett*, 518 F.2d 51, 54–55 (9th Cir. 1975); *United States v. Nu-Triumph, Inc.*, 500 F.2d 594, 596 (9th Cir. 1974). Thus, subject to the notice requirements set out in part II A, *supra*, the district judge may consider acts which are outside the reach of the criminal law because of extra-territoriality in determining whether the probationer is presently a fit subject for continued probation, for those acts may provide relevant evidence concerning the rehabilitation of the probationer and his potential danger to society. *Reed v. United States*, 181 F.2d 141, 142 (9th Cir.), *cert. denied*, 340 U.S. 879, 71 S.Ct. 116, 95 L.Ed. 639 (1950).

Here, the acts committed by Dane indicated that he had returned to his former life as a mercenary soldier. Furthermore, these acts followed Dane's earlier professions of intent to start a new life in Utah. Thus, the district judge could have reasonably determined that Dane had not been

THE COURT: If they tell me they are willing to sell it if it isn't something that is used in this country—but I don't care where explosives go, they kill people, and they are human beings.

What difference does it make if they are citizens of this country or citizens of Mexico, or what have you? If you sell something like that you are the instrument of people being killed, and maimed, and destroyed. And it seems to me a very irresponsible thing to do. There is enough killing going on in the world nowadays without your contributing to it. There are enough people eager to do that sort of think legally, without its being done illegally.

rehabilitated and that further probation was not likely to lead to rehabilitation. At the same time, Dane's acts indicated that he maintained his old fascination for weapons and soldiering. The district judge could have reasonably determined that Dane posed a danger to the community. Dane's peculiar fascination could readily lead to the handling of weapons or dealing in weapons, both of which are highly dangerous activities. Under these circumstances, the district judge was well within the proper scope of his discretion in finding that Dane was not a fit subject for continued probation.

### III

In conclusion, we hold that because Dane had received prior fair warning, that his probation condition forbade him from trading, possessing or carrying firearms or explosives and, in addition, that a return to the mercenary profession was inconsistent with his probation, and because his acts indicated that Dane had not been rehabilitated and indeed posed a danger to the community, the district judge did not abuse his discretion in revoking probation.

AFFIRMED.

GOODWIN, Circuit Judge, dissenting:

Imposition of conditions of probation is a nondelegable duty of the sentencing judge. *United States v. Crocker*, 435 F.2d 601 (8th Cir. 1971); *Whitehead v. United States*, 155 F.2d 460 (6th Cir.), *cert. denied*, 329 U.S. 747, 67 S.Ct. 66, 91 L.Ed. 644 (1946). The conditions of probation determine the restrictiveness and severity of the punishment imposed. They are an integral part of the probationary sentence and must be imposed in the defendant's presence under Fed.R. Crim.P. 43(a).[1]

Notwithstanding the foregoing principles which limit the imposition of conditions, the majority holds in effect that a sentencing judge has discretion to revoke a defendant's probation even though the defendant has violated no condition and committed no illegal acts. This result seems to conflict with *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

The "discretion" referred to in the majority opinion as being approved in *Gagnon* is the discretion of the probation officer to recommend revocation. For the trial judge, on the other hand,

"The first step in a revocation decision * * * involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Morrissey v. Brewer*, 408 U.S. 471, 479–80, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), *quoted in Gagnon v. Scarpelli*, 411 U.S. at 784,[2] 93 S.Ct. at 1760.

*Gagnon* identified the liberty interest at stake in probation revocation proceedings, and it mandated the procedures necessary to protect that interest. Its decision is binding on this court. Nonetheless, the majority engages in its own analysis of the liberty interest involved and then decides that less procedural protection is necessary. After today, the sentencing judge need only find that the probationer has acted in violation of a "prior fair warning" and not of an imposed condition.

*United States v. Ross*, 503 F.2d 940 (5th Cir. 1974), and *Tiitsman v. Black*, 536 F.2d 678 (6th Cir. 1976), cited by the majority, create a limited exception to the *Gagnon* rule when the probationer has engaged in criminal activity (in violation of the conditions of probation) either before his probation has technically begun or before he had

---

1. *See Pollard v. United States*, 352 U.S. 354, 356, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957).

2. Although the quoted language uses the term "parolee" rather than "probationer", the court was discussing the revocation process for pro-

bation and parole, and the passage is equally applicable to both. *See Gagnon v, Scarpelli*, 411 U.S. 778, 783–786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

notice of the conditions. However, neither case condones the extension of this principle to acts which are not criminal and which do not violate conditions of probation. In fact, *Tiitsman* makes a constitutional distinction between criminal and noncriminal behavior, explicitly limiting its holding to the former. The majority has cited no authority for its expansion of this limited exception.

What constitutes "prior fair warning" for the majority is unclear. The opinion offers no guidelines, leaving the question to the discretion of the sentencing judge. However, the facts of this case well illustrate the dangers of this erosion of *Gagnon*. The majority finds that Dane had "prior fair warning." Under any ordinary usage of the phrase, I cannot see how the record supports this finding. The subjectiveness of the standard as applied here effectively vitiates the procedural protections of *Gagnon*.

The acts which resulted in Dane's revocation were (1) his use of a rifle under the supervision of Mexican police in connection with an American television program; (2) the arrangements he made to have some of his weapons shipped to him in Europe and his subsequent possession of those weapons; and (3) his use of weapons in connection with his employment by the Rhodesian government training Rhodesian farmers as militiamen.

The record shows that Dane had a conversation with his parole officer about weapons Dane had at his house and the federal law prohibiting him as a felon from possessing weapons in this country, until, after successful completion of probation, he petitioned the proper authorities. However, nothing at all was said about his being forbidden to possess weapons when he was granted permission to leave the country on unsupervised probation. Under these circumstances, it is hard to see how the discussion with the parole officer provided any warning that the acts enumerated above could lead to revocation.

The majority cites as "fair warning" the dialogue occurring in the sentencing proceeding, which is reproduced in footnote 6 of the majority opinion. As can be seen, the discussion concerned the selling of explosives to underground groups for eventual use by terrorists. The judge was specifically condemning Dane's past illegal arms dealing. Nowhere did he even remotely imply that the legal handling of weapons might lead to revocation of probation.

Another "fair warning" found by the majority is a "clear understanding" that Dane was to give up his former profession as a mercenary soldier. The record betrays no such clarity. The most explicit discussion of Dane's activities is the dialogue quoted and relied on by the majority. From this dialogue, perhaps, can be inferred the judge's disapproval of international terrorist or insurgent military activities. The judge voiced no disapproval of Dane's career with the United States Special Forces in Vietnam even though, as a British national, he was serving as a mercenary, or, as he would say, as a "professional soldier". Dane's role in Rhodesia was analogous to his role in Vietnam, and the record suggests that his duties were far less bloody.[3] The "former profession" Dane was to give up was that of a dealer in illegal arms. Nothing in the record of the sentencing proceeding suggests anything else. Dane apparently gave up dealing in illegal arms and conformed his conduct to the requirement of the law. I find in the record no prior fair warning that more was required.

I would reverse.

---

**3.** Assuming that Dane understood that he was not to be a mercenary, this understanding would proscribe at most only one of the acts on which his revocation was based. Obtaining possession of one's personal weapons and us- ing a rifle for a television program are not, of course, activities which could reasonably be considered forbidden the admonition not to continue being a "mercenary".