717 P.2d 83

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**John DOE, a Child,**
**Respondent-Appellant.**

No. 8757.

Court of Appeals of New Mexico.

Feb. 18, 1986.

Asenath M. Kepler, Scheuer & Engel, P.C., Santa Fe, for respondent-appellant.

Paul G. Bardacke, Atty. Gen., William Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Respondent, a juvenile, appeals from the trial court's revocation of his probation. He raises two issues. First, whether the trial court violated respondent's right to due process by revoking his probation, absent competent evidence that respondent had been informed of the condition of probation which he allegedly violated. Second, whether the trial court, by relying solely on hearsay evidence in revoking the probation, violated respondent's due process rights of confrontation and cross-examination.

We reverse. Because we find the first issue dispositive, we do not discuss the second issue.

■ The standard of proof for probation revocation hearings in the children's court is proof beyond a reasonable doubt. NMSA 1978, § 32–1–43 (Repl.Pamp.1981). Except as otherwise provided by the Children's Court Rules of Procedure, the New Mexico Rules of Evidence govern all proceedings in the children's court. NMSA, 1978, Child.Ct.R. 15 (Repl.Pamp.1982). The New Mexico Rules of Evidence, however, are inapplicable to proceedings granting or revoking probation. NMSA 1978, Evid.R. 1101(d)(2) (Repl.Pamp.1983). Rather, the determination of whether respondent violated the conditions of his probation must be " 'based on verified facts' ". *State v. Vigil,* 97 N.M. 749, 751, 643 P.2d 618, 620 (Ct.App.1982) (quoting from *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

■ Probation revocation, like parole revocation, is not part of the criminal process. Probationers, accordingly, are not guaranteed "the full panoply of rights" afforded to defendants in a criminal proceeding. *Morrissey v. Brewer,* 408 U.S. at 480, 92 S.Ct. at 2600. Nevertheless, in revocation proceedings, probationers maintain their due process rights. *See id.; State v. Vigil.*

The state sought to establish its case through the testimony of two witnesses. Mr. Jake Gonzales, respondent's probation officer, testified that he had discussed with respondent the probation agreement and that respondent had initialled and signed

the agreement. In part, the probation agreement required respondent "[to] obey the reasonable and proper orders and demands of [his] parents, guardian or custodian with whom [he] reside[s]." Mr. Gonzales also testified he explained to respondent that, as a condition of his probation, respondent was required to reside at the Hogares Group Home. Mr. Gonzales, however, could not remember whether he told respondent that even a temporary absence from the group home could result in a probation revocation.

The state also called Mr. Robert Sugar, director of the Substance Abuse Program, who testified that during "Phase I" of the program, the "standard procedure" is to distribute a packet of information to the residents. A member of the staff then discusses the rules and regulations with each resident. The rules and regulations were not introduced into evidence. Mr. Sugar testified, however, that one of the rules restricts a resident during Phase I to the program and to the home. He explained that there is absolutely no free time, and he defined free time as "leaving the premises on your own."

Mr. Sugar, however, was not the staff person who delivered the packet of rules and regulations to respondent, nor was he the staff person who discussed the requirements with respondent. The staff person, Mr. Ron Petty, who had the relevant personal knowledge, was available to testify but was "on his day off." Mr. Sugar admitted, on cross-examination, he could not say that respondent ever received the packet or that any staff member discussed Hogares' rules and regulations with respondent.

■ Respondent has a constitutionally protected liberty interest in his probation. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *United States v. Dane,* 570 F.2d 840 (9th Cir.1977). The trial court's discretion, in probation revocation proceedings, thus, is tempered by due process considerations. *Dane.*

■ Respondent's assertion that he had not been informed that a temporary absence from Hogares would work a probation violation raises the issue whether his probation was revoked without due process of law. As stated in *Dane,* "[i]t is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty." 570 F.2d at 843 (citations omitted). This is no less true whether the loss of liberty results from a criminal conviction or the revocation of probation. *Id.* The facts in *Dane* are similar to those before us. In that case the government sought to revoke defendant's probation for violating a special condition of his probation, that he not trade, possess, or carry weapons, firearms, or explosives. There was no allegation that defendant, in that case, by handling weapons in Mexico, by having his personal weapons sent to him, and by engaging in armed instruction in Rhodesia, violated the laws of the United States or of any other country. In *Dane* there was conflicting proof as to whether the defendant ever had notice of the condition of probation which included a no-weapons condition. As here, there was no special condition in the judgment.

In addressing the due process requirement of fair warning, the *Dane* court drew a distinction between violations from which knowledge may be imputed and violations for which there must be a fair warning given. The court said:

As a general matter, formal conditions of probation serve the purpose of giving notice of proscribed activities. But a formal condition is not essential for purposes of notice. Courts have sustained the revocation of probation for criminal activity committed prior to the effective date of the conditions, *United States v. Ross,* 503 F.2d 940, 943 (5th Cir.1974), or where the defendant was not aware of the conditions, *Tiitsman v. Black,* 536 F.2d 678, 681–82 (6th Cir.1976). In such a case, knowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation.

On the other hand, where the proscribed acts are not criminal, due process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for those acts unless he is given prior fair warning. *Tiitsman v. Black, supra,* 536 F.2d at 682; *see United States v. Foster,* 500 F.2d 1241, 1244 (9th Cir.1974); *cf. Bouie v. City of Columbia, supra,* 378 U.S. 347 [84 S.Ct. 1697, 12 L.Ed.2d 894]. Of course, where the warning is not contained in a formal condition, the record must be closely scrutinized to determine whether the defendant did, in fact, receive the requisite warning.

*Id.* at 843–44 (footnote omitted).

Because the defendant in *Dane* had been admonished by the sentencing judge about weapons, the court held the defendant did receive sufficient prior notice. The same is not true in the present case. Neither of the state's witnesses could testify that respondent had been made aware of the specific Hogares' rule the state claimed he had breached. The state, therefore, has not met its burden of proof.

■ The state's arguments do not persuade us otherwise. First, the state argues that Mr. Sugar's testimony, concerning Hogares' standard procedure of distributing the packet and individually discussing the regulations with its residents, can be analogized to the business records exception to the hearsay rule. NMSA 1978, Evid.R. 803(6) (Repl.Pamp.1983). According to the state, the regularity of the practice establishes the inherent reliability of the evidence. While Mr. Sugar could testify to Hogares' standard procedure, he could not testify as to whether that procedure was followed in this case. It was incumbent upon the state to establish that respondent had been given fair warning of Hogares' rules in order for the state to prove its case. Inability to do so results in a failure of proof. *See State v. Losolla,* 84 N.M. 151, 500 P.2d 436 (Ct.App.1972).

While the state did not make this argument, we consider whether Mr. Sugar's testimony, as establishing Hogares' routine practice, could satisfy the state's burden of proving that respondent was aware of the probation condition. *See* NMSA 1978, Evid.R. 406 (Repl.Pamp.1983). We assume, but need not decide, that Mr. Sugar's testimony established that respondent was advised there were rules and regulations with which he was expected to comply. *See* NMSA 1978, Evid.R. 406 (Repl.Pamp.1983). Nevertheless, for the following reasons, Mr. Sugar's testimony did not establish that defendant was advised of the specific condition at issue. First, this specific Hogares' rule was not articulated in the formal probation agreement. The parole agreement only dictated that respondent must abide by the orders and demands of his custodian. The agreement did not enumerate those restrictions. Second, leaving Hogares temporarily certainly is not a criminal offense. We, therefore, cannot impute knowledge to respondent. Third, since the rules and regulations are not part of the record, we are not able to tell whether the rule restricting new residents to the program and to the home by its terms excluded a temporary absence. Consequently, evidence that it was routine practice to distribute and explain the rules does not establish respondent's knowledge of the particular condition at issue. Finally, after considering the above factors in light of the constitutionally protected liberty interest herein at stake, we hold that Mr. Sugar's testimony establishing Hogares' routine practice, without more, cannot prove that respondent knew he could not temporarily leave the home. *Cf. United States v. Floulis,* 457 F.Supp. 1350 (W.D. Pa.1978) (in a civil deportation proceeding, where standard is fundamental fairness, testimony regarding routine practice can be used to prove defendant's receipt of notice).

In *Galante v. United States Parole Commission,* 466 F.Supp. 1266 (D.Conn. 1979), petitioner raised the defense he had never been informed and had no knowledge of the condition of probation—association with known criminals. In rejecting this claim, the commission relied on a notation

on the certificate of mandatory release, purportedly signed by a caseworker, that stated petitioner had been informed of the mandatory release conditions. The court agreed with petitioner that, under *Morrissey v. Brewer*, minimum due process protections gave petitioner the right to confront and cross-examine adverse witnesses. The caseworker in that case, as Ron Petty here, was the only person who allegedly had informed the petitioner of the condition in question.

The state also argues that respondent should have requested a continuance in order to call Ron Petty to testify. By making such an argument, the state apparently seeks to shift the burden to respondent. We reject this argument. The burden is on the state to prove a probation violation beyond a reasonable doubt. § 32–1–43.

Finally, the state argues that we should attach some weight to respondent's failure to deny specifically that he was aware of Hogares' rules and regulations. Respondent did not testify at the revocation proceeding. Respondent was not required to testify. U.S. Const. amend. V; N.M. Const. art. 2, § 15; *State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App.1977).

We note that the burden of proof in adult probation revocation proceedings is less stringent. There the state must establish the violation of a condition of probation by "reasonable certainty." *State v. Murray*, 81 N.M. 445, 468 P.2d 416 (Ct.App.1970). The burden in juvenile probation revocation proceedings requires proof beyond a reasonable doubt. § 32–1–43. While arguably the evidence here may have satisfied the lesser burden, it did not satisfy the heavier one imposed by the legislature.

Accordingly, the order revoking probation and imposing sentence is reversed.

IT IS SO ORDERED.

MINZNER and GARCIA, JJ., concur.