909 P.2d 746

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**TONY G., Child–Appellant.**

**No. 16160.**

Court of Appeals of New Mexico.

Nov. 8, 1995.

Certiorari Denied Dec. 19, 1995.

Tom Udall, Attorney General, William McEuen, Asst. Attorney General, Santa Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for Child–Appellant.

## OPINION

PICKARD, Judge.

1. Child appeals the decision to revoke his probation. Child claims that he was denied due process of law because his probation was revoked without adequate notice and opportunity for a hearing and because the children's court did not issue an adequate statement of reasons for the revocation. Child also argues that there was insufficient evidence to support revocation and that the children's court erred when it allowed hearsay evidence at the revocation hearing. We affirm.

## I. FACTS

2. Child was declared a delinquent child in May 1994. He was sentenced to two years on probation. A condition of his probation was that he successfully complete a residential program at Sure House in Santa Rosa. Child was admitted to Sure House and lived there for nearly four months.

3. In October 1994, Child and other residents were taken by Sure House staff members on a hike near Santa Rosa Dam. Child and other residents hiked down a canyon trail while Sure House staff members remained at the top. During the hike, a fight broke out between residents who were members of rival gangs. Victim testified that he was on the ground, curled up to ward off the blows and kicks directed at him by his assailant or assailants. Victim testified that he looked up three times during the fight. He saw Child on two of the three occasions, but testified that he did not see Child hit or kick him.

4. Victim spoke with a police officer at Sure House that night. Victim testified that he first told the officer that he thought all the other residents took part in the fight. Later, according to Victim's testimony, he told the officer he saw only one assailant hit him, and that Child was not the assailant.

5. Sure House supervisor, Gwen Gallegos, was present during the interview. Gallegos testified that on the night of the incident Victim told the officer twice in Gallegos's presence that Child had participated in the fight. The officer did not testify at the hearing. Child objected to Gallegos's statement as hearsay. The objection was overruled.

6. There was testimony from Gallegos and other Sure House staff that Child's behavior had been deteriorating in the weeks preceding the incident. They testified that Child was "sassy" and "rude," and that he persisted in his disruptive behavior on the night of the fight. The police officer was called back to Sure House. He took Child into juvenile detention in Tucumcari. Child was later transferred to Roswell. Gallegos testified that Child's being taken to Roswell meant that he was no longer in the program. The clinical director of Sure House, after consultation with the staff, made the decision to terminate Child from the program.

7. The State argued that Child was terminated from Sure House for fighting and failing to work with the program by being disruptive and harassing the staff. When Child was terminated from Sure House, he violated his probation agreement. The children's court revoked Child's probation.

## II. DISCUSSION

### A. DUE PROCESS

■ 8. Child had a constitutionally protected liberty interest in his probationary status. *State v. Doe*, 104 N.M. 107, 109, 717 P.2d 83, 85 (Ct.App.1986) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973)). Before his probation could be revoked, he was entitled to notice and an opportunity to be heard to determine whether revocation was warranted. *State v. Brusenhan*, 78 N.M. 764, 766, 438 P.2d 174, 176 (Ct.App.1968).

### 1. NOTICE

■ 9. Child relies on *State v. Lynn C.*, 106 N.M. 681, 748 P.2d 978 (Ct.App.1987), *cert. denied*, 106 N.M. 714, 749 P.2d 99 (1988), to support his argument that he could not be terminated from the Sure House program without notice if termination from the program meant that his probation would be revoked. *See also Doe*, 104 N.M. at 109, 717 P.2d at 85 (it is an essential component of due process that individuals be given fair warning of acts which may lead to loss of liberty).

10. In *Lynn C.*, the juvenile defendant was a resident of a group home. Her probation was revoked after she admitted to smoking. This was a violation of the group home's rules. The court in *Lynn C.* found that violation of the group home rules was adequate grounds for revocation. 106 N.M. at 683, 748 P.2d at 980. On appeal, this Court found no due process violation, as long as the defendant understood that smoking could result in her probation being revoked. *Id.*

11. The instant case is subject to the same analysis. Child signed his probation agreement. Therefore, Child was on notice that he was required to successfully complete the program. This meant that he was required to make good faith efforts to comply with program requirements. *See id.* at 683, 748 P.2d at 980. Moreover, the basis for Child's termination from the program was

behavior which Child should have known could result in his termination.

12. Child blurs the distinction between behavior which could result in being terminated from a residential rehabilitation program and behavior which is sufficient by itself to result in a revocation of probation. For instance, if Child had used or possessed alcohol, drugs, or weapons, he would have directly violated an express term of his probation agreement. Because successful completion of the Sure House program was an express condition of Child's probation agreement, termination from the program was also a violation of an express condition of the agreement.

13. The *Doe* court drew a distinction between violations of probation for which knowledge that revocation might follow may be imputed and violations for which fair warning must be given. 104 N.M. at 109–10, 717 P.2d at 85–86. Knowledge of criminal law may be imputed to the probationer. *Id.* Knowledge that a violation of criminal law will lead to revocation of probation may also be imputed. *Id.* It is only when the proscribed acts are not criminal that due process mandates prior fair warning. *Id.*

14. This same analysis may be applied to program rules that could result in termination from a program which, in turn, is a probation violation. There is a distinction between program rules, such as prohibitions against smoking or temporary absences, and criminal laws, such as prohibitions against assaults and batteries. Knowledge that termination from a program could result from violations of the latter may be imputed to Child for the reasons outlined in *Doe.*

15. The basis for the termination of Child from the program was behavior which Child should have known could result in his termination. Child was not working to successfully complete the Sure House program. He disrupted group meetings. He was insolent and disobedient to staff. He participated in a brutal beating of another resident. Following the beating, he was disruptive at a group session and would not obey the staff's commands. This behavior led to termination from the program under circumstances that did not require prior specific notice. This

was a violation of his probation agreement. *See Lynn C.,* 106 N.M. at 683, 748 P.2d at 980; *Doe,* 104 N.M. at 109–10, 717 P.2d at 85–86.

## 2. *HEARING*

16. We disagree that Child had no opportunity for a hearing prior to having his probation revoked. Child confuses termination from the Sure House program with revocation of his probation. None of the cases Child relies on, particularly *Doe* and *Lynn C.,* requires Sure House or the court to conduct a hearing upon notice before terminating Child from the program. Based on Child's behavior on the day of the fight, especially after the fight, and his deteriorating attitude in the previous weeks, Sure House determined that it was in Child's and the program's best interest that he be terminated from the program.

17. A residential rehabilitative program has a clinical imperative to provide safe facilities for its residents and staff. To protect other residents and the integrity of the program, Sure House made a clinical decision that Child should not continue to participate. This decision was made after ample opportunity for Child to conform his behavior to the expectations of the program.

18. The probation revocation hearing held by the children's court was a full evidentiary hearing. Child cross-examined the witnesses against him and presented his own witnesses. The children's court heard the evidence and found that Child had violated an express term of his probation agreement. Child's violation resulted in revocation of his probation. There was no error in Sure House's decision to terminate Child and no error in the children's court's decision to revoke Child's probation because he was terminated.

## 3. *RULING*

19. At the evidentiary hearing, the children's court stated its reasons for revoking Child's probation, based on all of the evidence presented. The court found that Child had verbally harassed staff, refused to obey their instructions, and disrupted program activities. With regard to the beating

incident, the court noted that Victim's testimony was "understandably equivocal" (given that members of the gang that beat him up were still at Sure House) and that Gallegos's testimony was unequivocal that Victim twice identified Child as an assailant. The court did not find Child's witnesses credible on the issue of Child's non-participation in the beating.

20. These statements of the children's court provided Child with the court's reasoning behind its decision to revoke his probation. The court ruled that Child was justifiably terminated from the Sure House program. Child complains that because the ruling of the children's court was not written, Child was not adequately informed of the basis for the ruling. We disagree. Both the Child and this Court have an ample basis for ascertaining the rationale of the children's court's decision entered below. *See State v. Bernal,* 106 N.M. 117, 119, 739 P.2d 986, 988 (Ct.App.) (oral statement of court's reasons was part of appellate record because it was included in the transcript), *cert. denied,* 106 N.M. 81, 738 P.2d 1326 (1987). The children's court was not required to set forth its rationale in writing, as long as Child was informed of the basis for the ruling at the hearing. The children's court judge stated his view and analysis of the evidence at the hearing. The fact that the decision was not reduced to writing did not violate Child's due process rights.

### B. *SUFFICIENCY OF EVIDENCE*

21. In juvenile cases, a violation which leads to the revocation of probation must be proved beyond a reasonable doubt. *Compare Doe,* 104 N.M. at 108, 717 P.2d at 84 (standard of proof in juvenile probation revocation proceeding) *with State v. Murray,* 81 N.M. 445, 447, 468 P.2d 416, 418 (Ct.App. 1970) (probation violation in adult revocation proceeding must be proved with reasonable certainty). We view the evidence in a light most favorable to the State, indulging all reasonable inferences and resolving all conflicts to uphold the decision below. *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994).

22. The testimony at the revocation hearing indicated that Sure House had a high level of tolerance for misbehavior among residents. Nonetheless, Child's inappropriate behavior set in motion a series of events which led to his termination. Sure House determined that Child should be expelled from the program after the events of the day showed that he would not successfully complete the program. Because Gallegos's testimony, at one point, indicated that Child was terminated because the series of events resulted in Child being removed from the Santa Rosa area, Child contends that the revocation of his probation should be reversed. We disagree. The record shows sufficient evidence for the children's court's determination that Child had violated the conditions of his probation beyond a reasonable doubt. *Lynn C.,* 106 N.M. at 682, 748 P.2d at 979. The standard of review requires us to review the evidence in the light most favorable to support the termination. While the high tolerance for disruptive behavior and Gallegos's vague answer could be grounds for a result opposite to that found by the children's court, our task is to review for substantial evidence, and not to determine whether the children's court could have reached a different result. *See State v. Anderson,* 107 N.M. 165, 168, 754 P.2d 542, 545 (Ct.App.1988).

### C. *HEARSAY EVIDENCE*

23. At the probation revocation hearing, Victim testified that he did not see Child hit or kick him during the fight. Gallegos testified that Victim had identified Child as an assailant when speaking to a police officer on the night of the fight. Child objected that the statements were inadmissible hearsay, but the objection was overruled.

24. The Rules of Evidence which regulate the use of hearsay in civil and criminal proceedings do not apply to proceedings for revoking probation. *State v. Vigil,* 97 N.M. 749, 751, 643 P.2d 618, 620 (Ct.App.1982). The determination whether defendants have violated their probation must be made on verified facts. *Doe,* 104 N.M. at 108, 717 P.2d at 84.

25. Nonetheless, we agree with the children's court judge and the State that the

statements made were not hearsay under the applicable evidence rule as it existed at the time the petition to revoke probation was filed, but instead were prior inconsistent statements of Victim. SCRA 1986, 11–801(D)(1)(a) (Repl.1994). As such, they were admissible as substantive evidence. *Id.* It was up to the children's court to determine the credibility value of such statements. *State v. Lancaster,* 116 N.M. 41, 47, 859 P.2d 1068, 1074 (Ct.App.1993).

26. Furthermore, there was ample evidence in addition to Gallegos's testimony to support the decision to terminate Child from Sure House. Sure House residents and staff members testified that Child was disruptive and belligerent. Staff members testified that Child had been behaving inappropriately for at least two weeks prior to the night on which he was arrested and taken into detention. We disagree with Child's contention that the only reason that he was terminated from Sure House was because Gallegos testified that Victim had twice identified Child as an assailant.

III. *CONCLUSION*

27. The revocation of Child's probation for failing to successfully complete the Sure House program is affirmed.

28. **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.