This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. 31,879**

**JOSHUA M.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Child appeals from the children's court's order revoking his probation. He contends that (1) he did not have proper notice of the conditions of his probation to satisfy due process requirements; (2) the children's court improperly refused to grant him a continuance, impairing his defense and violating his due process rights; and (3) his discharge from the Desert Hills residential treatment center violated his due process rights. We affirm.

**NOTICE OF CONDITION OF PROBATION**

The petition charged Child with non-residential burglary, larceny over $500.00, and conspiracy to commit non-residential burglary. The children's court adjudicated Child as a delinquent child and placed him on supervised probation for a period not exceeding one year, subject to conditions that included the successful completion of the Multi-Systemic Therapy Program and the Juvenile Community Corrections Program, as directed by Child's probation officer. A probationary agreement, signed by Child, Child's mother, the probation officer, the supervisory probation officer, and the children's court judge, was entered in the court record on March 11, 2010.

The children's court subsequently entered an order revoking Child's probation. It committed Child to the Children, Youth and Families Department (CYFD) for a period not to exceed two years, suspended the commitment, and placed Child on supervised probation for a period not to exceed two years, subject to conditions that

included the Multi-Systemic Therapy Program and the Juvenile Community Corrections Program, as directed by Child's probation officer. A signed probationary agreement was entered on September 30, 2010.

The State filed a second petition to revoke probation on May 13, 2011. At the dispositional hearing held on July 11, 2011, the children's court determined that because it had suspended a two-year commitment to CYFD, it would impose the commitment unless Child could be accepted at a residential treatment center. It ordered that Child be held in detention pending acceptance at a residential treatment center. The children's court's judgment and disposition entered August 26, 2011 ordered that Child be committed to CYFD for an indeterminate period not to exceed two years unless Child "enters into and successfully completes a Residential Treatment Center as directed by the Juvenile Probation and Parole Department."

The State filed a third petition to revoke probation on September 26, 2011. The basis for the petition was Child's probation officer's report that Desert Hills unsuccessfully discharged Child from its program. A signed probation agreement with the special condition that Child attend and successfully complete a residential treatment center program was signed by Child on September 27, 2011 and entered on October 14, 2011.

Child asserts that his due process rights were infringed because he did not have

3

proper notice of the conditions of his probation when it was revoked. Child's argument raises an issue of law that we review de novo. *See In re Adoption of Homer F.*, 2009-NMCA-082, ¶ 7, 146 N.M. 845, 215 P.3d 783 (stating that questions of law are reviewed de novo).

Child "has a constitutionally protected liberty interest in his probation." *State v. Doe*, 104 N.M. 107, 109, 717 P.2d 83, 85 (Ct. App. 1986), *abrogated on other grounds by State v. Erickson K.*, 2002-NMCA-058, 132 N.M. 258, 46 P.3d 1258. He is therefore entitled to the due process protections of the Fourteenth Amendment to the United States Constitution and of Article II, Section 18 of the New Mexico Constitution. *Doe*, 104 N.M. at 109, 717 P.2d at 85. When the conduct that gives rise to the revocation is not criminal activity, the issue is whether the probationer has had "fair warning" that the acts could result in the loss of liberty. *Id.* at 109-10, 717 P.2d at 85-86. "[W]here the warning is not contained in a formal condition, the record must be closely scrutinized to determine whether the [probationer] did, in fact, receive the requisite warning." *Id.* at 110, 717 P.2d at 86 (internal quotation marks and citation omitted).

Child relies on the lack of a signed probation agreement at the time of Child's acts that led to his discharge from Desert Hills as well as *Doe* to argue that the State did not meet its burden. The probation agreement is a procedure described in CYFD

4

regulations. *See* 8.14.2.13(C)(2) NMAC (7/31/09) ("The conditions of probation are furnished in writing to the client and his/her parent/guardian/custodian, and are acknowledged in writing."). Indeed, if the procedure were timely followed, Child clearly would have had knowledge of the consequences of his failure to successfully complete the residential treatment program. Although it is not dispositive, the lack of a timely probation agreement is a factor in our analysis of whether Child received adequate warning.

In *Doe*, this Court reversed the probation revocation because the state did not satisfy its burden of establishing that the juvenile was aware of the probation condition that he obey the rules and regulations of the group home where he was required to reside. *Doe*, 102 N.M. at 109-10, 717 P.2d at 85-86. The juvenile had signed a probation agreement that required that he obey his custodians, but his probation officer could not remember whether he told the juvenile that his probation could be revoked for a temporary absence from the group home. *Id.* at 109, 717 P.2d at 85. The staff member of the group home who testified did not have personal knowledge of whether the juvenile either received the rules and regulations or was informed of their content. *Id.* This Court held that the state did not meet its burden of establishing the juvenile's awareness that a temporary absence could result in a probation revocation. *Id.* at 110, 717 P.2d at 86.

The facts are different in this case. First, the August 26, 2011 judgment and disposition that is at issue did not order Child to serve probation. The children's court ordered a two-year commitment to CYFD unless Child successfully completed a residential treatment program. By the language of the judgment and disposition, it was clear that the failure to successfully complete a residential treatment program would result in the commitment. *See State v. Gomez*, 2011-NMCA-120, ¶ 14, 267 P.3d 831 (stating that the defendant reasonably understood the limits of his entire sentence based on the plain language of the plea agreements). Moreover, the fact that the judgment and disposition did not provide for probation explains why there was no probation agreement entered at that time of the proceedings.

Second, the children's court discussed its intended actions that were contained in the judgment and disposition in open court in the presence of Child, his mother, and his attorney. The children's court stated that it was imposing the two-year commitment because Child had previously received a suspended commitment and was told that if he did not comply, the court would impose the commitment. The children's court added that if Child were accepted into a residential treatment program and violated again, he would be committed. The children's court's statements in open court provided further notice to Child of the consequences of his failure to successfully complete a residential treatment program, if he was accepted into one.

6

Third, to the extent that Child argues that "there was no evidence . . . that [he] was ever informed of the rules governing Desert Hills or that [he] knew what conduct could lead to termination from Desert Hills[,]" we disagree. Child testified that he knew that there were a "couple of times" he was supposed to do "something that [he] was not doing." He had received "consequences" for other activities. Misty Long, Child's therapist at Desert Hills, testified that Child broke the rules by manufacturing a weapon that he was swinging at the night staff, broke confidentiality after being informed not to do so, provided fabricated information to other children that led to a riot, and did not cooperate with treatment. Child's actions were of the nature that he reasonably should have known would lead to discipline. *See State v. Tony G.*, 121 N.M. 186, 188-89, 909 P.2d 746, 748-49 (Ct. App. 1995) (holding that behavior that a child "should have known could result" in termination from a program created "circumstances that did not require prior specific notice"), *abrogated on other grounds by Erickson K.*, 2002-NMCA-058.

**CONTINUANCE**

"The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant." *State v. Sanchez*, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995). The factors that bear on one court's direction include:

the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. We address Child's argument that the children's court violated his right to compulsory process by addressing these factors. *See id.* (stating that the stated factors address the balance of the constitutional right to compulsory process with the other factors).

On October 7, 2011, the children's court granted Child a ten-day continuance to enable Child to subpoena witnesses and gather evidence. On October 17, 2011, the children's court again continued the adjudicatory hearing until November 4, 2011 after Child's attorney indicated that he could not subpoena witnesses. Child's attorney did not file his witness list until November 3, 2011. He did not attempt to serve subpoenas on the witnesses at issue until October 28, 2011, and October 31, 2011. Child was in detention awaiting the adjudicatory hearing.

Child argues that the witnesses were critical because they, other clients of Desert Hills, would testify in support of his defense that Long, not Child, created the situation that led to the riot, a credibility determination. By requesting the continuance, Child's attorney stated that he did not learn until November 3, 2011 that he needed court orders to serve and transport these witnesses.

8

Based on the *Torres* factors, we cannot conclude that the children's court abused its discretion in denying the continuance. The children's court had granted previous continuance requests to enable Child to gather evidence and subpoena witnesses. The adjudicatory hearing was ultimately held twenty-seven days after originally set. Child was in detention during this time. *See* Rule 10-243(A) NMRA (requiring adjudicatory hearings for children in detention to be held within thirty days of the latest of various events). Child's attorney did not seek to compel the attendance of the witnesses he sought until very shortly before trial. Moreover, the critical nature of the witnesses' testimony is questionable. The children's court ruled that the testimony would not have bearing on its decision because Child was discharged from Desert Hills for reasons in addition to the riot that independently supported its ruling on the merits. As we have stated, Long testified to alternative bases to support Child's discharge. The children's court did not abuse its discretion in denying Child's motion for continuance.

**PROTECTED LIBERTY INTEREST**

Child argues that because his successful completion of the Desert Hills program was a condition of his probation, he was entitled to notice and a hearing prior to his discharge from Desert Hills. We address Child's argument under de novo review because it raises a question of law. *See In re Adoption of Homer F.*, 2009-NMCA-

9

082, ¶ 7 (stating that questions of law are reviewed de novo).

In *Tony G.*, 121 N.M. at 189, 909 P.2d at 749, this Court addressed a similar argument and declined to hold that the child was entitled to a hearing prior to termination from a residential program. As we have discussed, as in *Tony G.*, Child was on notice that the type of behavior in which he engaged could lead to his discharge from the Desert Hills program. A hearing on his discharge was not required. *See id*. Child was entitled to contest the consequences of his acts in his adjudicatory hearing. There was no due process violation.

**CONCLUSION**

We affirm the children's court's order revoking probation.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**LINDA M. VANZI, Judge**