ANN WALSH BRADLEY, J.
¶ 91. {dissenting). The majority opinion devotes only two paragraphs to what is the main focus of Greer's argument: he was denied due process because he did not have notice that he was on probation. Majority op., ¶¶ 67-68. The bulk of its analysis frames the due process issue as focusing instead on the Department of Correction's ("DOC") failure to accurately maintain records. Id., ¶¶ 38, 56, 63-66. It downplays the fact that the DOC informed Greer on several occasions that his probation was complete, and suggests that Greer received due process because he was present at his sentencing hearing. Id., ¶ 67.
¶ 92. Ultimately, the majority determines that because Greer "knew or should have known" that he had not completed his probation term, "Greer's right to procedural due process was not violated." Id., ¶¶ 67, 68. It asserts that his presence at the sentencing hearing "should have caused Greer to question the issuance of a discharge certificate." Id., ¶ 81.
*346 ¶ 93. Although presence at sentencing would normally put a defendant on notice of the length of probation, when the DOC makes repeated representations to a defendant that his probation is complete, due process requires more. Because I conclude that due process requires that Greer have adequate notice of his probationary status, and that the multiple representations that the DOC made to Greer indicating that his probation was complete deprived Greer of adequate notice, I respectfully dissent.
I
¶ 94. On March 14, 2005, Greer pled guilty to two separate charges for which he received two separate sentences and terms of probation. It is undisputed that the DOC failed to enter Greer's probation for the second conviction into its system. As a result, even though under the sentencing scheme his discharge date should have been September 28, 2010, DOC records indicated a discharge date of September 28, 2007.
¶ 95. According to DOC records, on September 11, 2007, Greer's probation agent apparently spoke with him regarding the discharge date of his probationary period. Her notes read:
[Greer] discharges from extended supervision on 09/28/07 and will come in to the office tomorrow to sign a civil judgment for his unpaid court costs. Next Appointment: [Greer] will return to the office on 09/12/07 at 4:00 to sign a civil judgment. This will be his final appointment.
(Emphasis added.)
¶ 96. On September 12, 2007, Greer met with his agent to convert any remaining fees into a civil judg *347 ment. Her notes of that meeting indicate that she again informed him that his discharge date was September 28, 2007:
[Greer] reported to the office and signed his civil judgment. He was told that a letter will be sent to the courts and he will still be required to pay off his financial obligations but to the clerk of courts and some will be taken out in a tax intercept. [Greer] was reminded that even though this agent will no longer be seeing him he is still technically on supervision until midnight on September 28, 2007.
(Emphasis added.)
¶ 97. Greer contacted his agent again on September 28, 2007, to confirm the date of his discharge. In response to his request for confirmation, the agent's notes reflect that she again verified that his probation ended that very day at midnight:
[Greer] called this agent and wanted to verify that his supervision was done today. He was again told that technically he was still on until midnight but his paperwork had been signed off on and he did not need to see this agent. He was told that when a copy of his discharge letter is received a copy will be mailed to his house so that he can have one for his records. [Greer] thanked this agent for working with him and was wished luck for his future endeavors.
(Emphasis added.)
¶ 98. Greer received a Discharge Certificate on October 3, 2007, relating to his first conviction. It informed Greer that "[t]he department having determined that you have satisfied said judgment, it is ordered that effective September 28, 2007, you are discharged from said judgment only."
*348 ¶ 99. The same day, Greer received an absolute Discharge Certificate on DOC letterhead, signed by the Secretary of the DOC. It informed Greer that "effective September 28, 2007, you are discharged absolutely."
DISCHARGE CERTIFICATE
ARDONIS F. GREER, #348377-A
You were sentenced to Wisconsin State Prisons.
The department having determined that you have satisfied said sentence, it is ordered that effective September 28, 2007, you are discharged absolutely.
This discharge does not forgive your current (tentative) balance of unpaid supervision fees, in the amount of $210.00. This amount is subject to supervision fees for your last month of supervision and any outstanding payments. The balance is (tentative) as a result of delayed supervision fee charges still to be posted.
Failure to pay the full amount due may result in the taking of future Wisconsin income tax refunds or lottery winnings.
Restoration of civil rights for felony convictions:
This certifies that the following civil rights are restored to you:
1. The right to vote.
2. The obligation for jury duty.
(Emphasis added.)
¶ 100. Greer pled guilty to intimidating a witness on June 25, 2010. While conducting a presentence investigation for that conviction, the DOC noticed the *349 error in its records. Subsequently, it revoked Greer's probation due to his new conviction.
¶ 101. Based on the DOC's statements that his probation was complete on September 28, 2007, Greer asserts that his due process rights were violated when the DOC revoked his probation after that date. He further contends that his due process rights were violated because the DOC used inconsistent numbers on his revocation paperwork.
II
¶ 102. Both the United States Constitution and the Wisconsin Constitution guarantee the right to due process. U.S. Const, amend. XTV( § 1; Wis. Const. Art. I, § 8. As the majority notes, procedural due process requires government action depriving a person of life, liberty, or property to "be implemented in a fair manner." Majority op., ¶ 62 (quoting State v. Laxton, 2002 WI 82, ¶ 10 n.8, 254 Wis. 2d 185, 647 N.W.2d 784).
¶ 103. Central to procedural due process is notice. Fairness requires that an individual have warning of what acts may lead to a loss of liberty. United States v. Dane, 570 F.2d 840, 843 (9th Cir. 1977). As this court has previously explained:
Because we assume that [persons are] free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly. Such notice is a basic requirement of due process.
Green v. State Elections Bd., 2007 WI 45, ¶ 20, 300 Wis. 2d 164, 732 N.W.2d 750 (quoting Elections Bd. v. Wisconsin Manufacturers & Commerce, 227 Wis. 2d 650, 597 N.W.2d 721 (1999)).
*350 ¶ 104. Due process rights apply not only to criminal prosecutions, but also to probation revocations. Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973). Accordingly, probationers must be notified of the conditions of their probation before violations of such conditions can be used as grounds for revocation. G.G.D. v. State, 97 Wis. 2d 1, 7-8, 292 N.W.2d 853 (1980) (concluding that there is a "fundamental due process right to adequate notice of the conditions upon which the revocation of probation may be premised."); United States v. Ashland, Inc., 356 F.3d 871, 874 (8th Cir. 2004) ("due process . .. includes a right to have terms and conditions of probation that are sufficiently clear to inform it of what conduct will result in an infraction of probation"); United States v. Simmons, 812 F.2d 561, 565 (9th Cir. 1987) ("due process requires that the probationer receive actual notice").
¶ 105. This court has previously recognized that "the sufficiency of notice of [probation] conditions [is] crucial to the basic fairness of the system." G.G.D., 97 Wis. 2d at 9. Logically, this notice requirement encompasses the length of probation, as well as the fact that an individual is on probation in the first place.
¶ 106. The facts in this case demonstrate that Greer did not have adequate notice that he was on probation. Greer met with his supervising agent on September 11, 2007, and was advised of a discharge date of September 28, 2007. He met again with the agent the next day to convert any remaining fees into a civil judgment and she again told Greer he would be discharged on September 28, 2007. When he called his supervising agent on September 28, 2007, she confirmed that his probation would be complete at midnight. Greer then received an absolute Discharge Certificate stating it was effective September 28, 2007.
*351 ¶ 107. The majority downplays these facts which underlie Greer's procedural due process arguments. It suggests that Greer should have questioned his discharge date because he was present at his sentencing hearing which occurred over five years prior to the revocation. Majority op., ¶ 81. The majority ignores, however, that is exactly what Greer did.
¶ 108. On September 28, 2007, Greer called his probation agent and asked the agent to verify the discharge date. His agent confirmed that the date was accurate. The majority does not indicate what else Greer should have done after being repeatedly advised, both verbally and in writing, that the discharge date was September 28, 2007. What more would the majority expect that Greer do to uncover the fact that he was still on probation and that the absolute Discharge Certificate was erroneously issued?
¶ 109. Despite the fact that Greer was told several times that he was discharged, the majority states that Greer "knew or should have known" that he was still on probation. Majority op., ¶ 67. However, the DOC is the agency charged with administering probation matters. Wis. Stat. § 301.03(3). Its rules require probation agents to maintain complete and accurate records for each offender. Wis. Admin. Code § DOC 328.04(2)(j). It was the DOC and its agent that informed Greer his probation had been completed. Where the agency charged with keeping probation records informed Greer not once, but multiple times that he had completed his probation, it appears fictitious to state that Greer "knew or should have known" that his probation was not complete. Majority op., ¶ 67. Contrary to the majority's assertion, it was not unreasonable for Greer to believe what he was repeatedly told by the DOC.
*352 ¶ 110. As a consequence of the DOC's representations, Greer was unaware that he still had to comply with the conditions of his probation. These included a ban on alcohol, a ban on voting, and required periodic reporting to his probation agent. Greer violated each of these conditions while he thought his probation was over. Notably, one of the initial grounds given for Greer's revocation was his admitted consumption of alcohol, an action he would not have known was prohibited.
¶ 111. The other ground for Greer's violation was his new conviction. The conviction was a result of a plea bargain Greer agreed to, unaware that it could have consequences beyond the bargained-for sentence. We cannot know how Greer would have behaved had he been aware that he was still on probation. Admittedly, Greer should be punished for his new criminal behavior. Greer was convicted for his new offense and received a separate sentence for it. The question is not whether he should be accountable for his new criminal conduct. Rather, the question is did he have notice that his actions could lead to a revocation of probation.
¶ 112. "[T]he cardinal and ultimate test of the presence or absence of due process of law in any administrative proceeding is the presence or absence of the 'rudiments of fair play long known to our law." State ex rel. Madison Airport Co. v. Wrabetz, 231 Wis. 147, 153, 285 N.W. 504 (1939). Fairness requires that Greer have notice of his probationary status.
¶ 113. I conclude that the multiple representations that the DOC made to Greer indicating that his probation was complete deprived Greer of adequate notice of his probationary status. Such notice is required to comport with due process. Accordingly, I respectfully dissent.
*353 ¶ 114. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.