**UNITED STATES of America, Appellee,**

**v.**

**David Charles FOSTER, Appellant.**

**No. 73-3028.**

United States Court of Appeals, Ninth Circuit.

July 11, 1974.

1242

Barry J. Portman, Deputy Federal Public Defender (argued), Los Angeles, Cal., for appellant.

Mark O. Heaney, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

## OPINION

Before KOELSCH and HUFSTED-LER, Circuit Judges, and TURREN-TINE,* District Judge.

HUFSTEDLER, Circuit Judge:

Foster appeals from an order revoking his probation, contending that the evidence does not support a determination that he intentionally violated the terms of probation and that the district court's decision to revoke was an abuse of discretion. He also contends that the manner in which the district court conducted the probation revocation hearings denied him due process.

On January 12, 1973, Foster pleaded guilty to possessing an altered $20 Federal Reserve Note with intent to defraud in violation of 18 U.S.C. § 472. The district court sentenced him to the custody of the Attorney General, providing that Foster "shall be confined in a jail-type institution for the first 60 days, said days to be served on consecutive weekends from 8:00 A.M. Saturdays until 6:00 P.M. Sundays commencing January 20, 1973; the remainder of the term of imprisonment is suspended and the defendant is placed on probation for a period of three years on the conditions he obey all laws Federal State and local and comply with all rules and regulations of the Probation Officer."

At the time of sentencing, Foster had been in continuous federal custody for 39 days: from December 5, 1972, the date of his arrest upon the charge to which he pleaded guilty, to January 12, 1973. In imposing sentence, the district court indicated its intention to credit the time Foster had already spent in custody to the 60-day-jail-term portion of the sentence.[1]

Foster was released into state custody on January 12, 1973, and removed to the Orange County jail pending sentencing on state charges. The state court imposed a 15-day sentence to run concurrently with Foster's 60-day federal term. He was released from the Orange County jail on February 6, 1973, after serving the 15-day state sentence.

---

* Southern District of California, sitting by designation.

1. The court said: "Mr. Foster, you are going to do a little more time, whatever the remainder is of the 60 days from that which you have already done. You have seen what it is in terms of five weeks. You are intelligent enough to make up your own mind. If you like it or you think there is nothing to it, all you have to do is come back to this Court within three years and we'll make sure that that is increased about 20 times."

When released from the Orange County jail, Foster had served 64 continuous days in custody since his arrest on December 5, 1972. Foster believed that his confinement for more than 60 days in the Los Angeles County and Orange County jails discharged his federal jail time requirement, an apprehension which was apparently shared by the state judge who sentenced him to jail in Orange County.

After his release from jail, Foster moved to Palm Springs, where he was employed until arrested on a bench warrant on August 8, 1973. Foster was charged with violating the terms of his probation by failing to report to the Los Angeles County jail to serve his federal jail time, failing to report to the probation department, and failing to report his change of address to his probation officer.

The conviction for possession of an altered Federal Reserve Note was Foster's first offense. Neither at the time of sentencing nor afterward was he informed by the district court, anyone from the Government, or his own attorney that he should report to the probation department for any purpose. No presentence report was prepared. He was not contacted by anyone from the probation department during his two months of confinement in Los Angeles and Orange County jails. He was not interviewed by a probation officer until his arrest on the bench warrant in August 1973.

On September 13 and October 1, 1973, the district court held hearings pursuant to its order to show cause why Foster's probation should not be revoked. At the conclusion of the second hearing the district court found that Foster had violated the conditions of probation, vacated the prior probation order, and suspended further execution of the prior sentence. The court then placed Foster on five years' probation, conditioned on his serving 180 days in the county jail on consecutive weekends. Foster appeals from this order.

Although Foster served no time in the Los Angeles County jail following imposition of sentence by the district court, this failure is not an adequate ground for revoking his probation. Confinement in the Los Angeles facility was not a condition of probation. The judgment specified only that the confinement be in a "jail-type institution." Foster was confined at such an institution, Orange County jail, after sentencing by the district court. Foster must receive credit for the time served at the Orange County facility if, during that confinement, he was "in custody in connection with the offense or acts for which [the federal] sentence was imposed." (18 U.S.C. § 3568.) However, we are unable to determine from the record before us the exact basis of his confinement in the Orange County jail. If the state would not have incarcerated him pending the outcome of his state prosecution but for the federal conviction, the time he spent in the Orange County jail is to be deemed "custody in connection with" the federal charge. (United States v. Eidum (9th Cir. 1973) 474 F.2d 579, 580–81; Davis v. Attorney General (5th Cir. 1970) 425 F. 2d 238, 240.) On the other hand, if his custody in the Orange County jail was exclusively pursuant to the state offense and was not influenced by the federal conviction, no credit for time served is due. The record can be appropriately developed and the issue resolved on remand.

The record before us does establish that, because of the failure by the district court · to specify Los Angeles County jail and uncertainty as to the effect of detention at Orange County jail, it was reasonable for Foster to believe that the 60-day-jail-term portion of his sentence had been satisfied by his confinement in both the Los Angeles and Orange County jails. Accordingly, even if he must still serve a portion of his original 60-day term, Foster's failure to

report to the Los Angeles County jail was not a proper basis for revocation of probation. (United States v. Chapel (9th Cir. 1970) 428 F.2d 472, 474.)

■ Foster was not informed in any way that he had an obligation either to report to the probation department or to advise the probation office of his change of address. Foster's failure to maintain contact with the probation department, therefore, cannot be a predicate for revoking his probation. (*See* United States v. Chapel, *supra*; United States v. Taylor (4th Cir. 1963) 321 F.2d 339, 341. *See generally* ABA Project on Standards for Criminal Justice, Probation § 5.1 (approved draft 1970).) Although the district court was not required to believe Foster's testimony, disbelief is not a substitute for affirmative evidence that he was in any way in-

formed that these duties were conditions of his probation. (*Cf.* Wessel v. Buhler (9th Cir. 1971) 437 F.2d 279, 282–283.) Nothing in the record supports a finding that Foster was informed of such conditions.

■ The record of the hearings pursuant to the order to show cause why probation should not be revoked reveals that the "interchanges between court and counsel were marked by expressions and revealed an attitude which hardly reflected the restraints of conventional judicial demeanor." (Offutt v. United States (1954) 348 U.S. 11, 12, 75 S.Ct. 11, 12, 99 L.Ed. 11.) The district court's frequent interruptions of Foster's counsel and its intemperate remarks deprived Foster of a fair hearing.[2] (ABA Code of Judicial Con-

---

2. The following excerpts from the record are illustrative:

During the hearing on September 13, 1973, Foster's counsel, Mr. Portman, attempted to explain to the court that his client had a good faith belief that he had fully served his federal jail sentence and to demonstrate that the record supported his client's claim of ignorance of the conditions of reporting. Mr. Portman said: "I have consulted the probation file and there is no signature of the defendant.

"If I may approach the clerk again.

"On the standard temporary conditions of probation, which I believe is customarily tendered to a custody case either in the courtroom—

"THE COURT: So what? Mr. Portman, he was told certain things and that he was on probation. Now, if they are not going to take it from my telling them, then they will go to the can instead of going on probation. If they think they have to sign something—

"MR. PORTMAN: Your Honor, what I am saying is this: He tells me—

"THE COURT: Don't give me any of that, Mr. Portman, that because he didn't sign anything he didn't have to report to the probation officer. That is a bunch of bunk."

The following exchanges took place at the hearing on October 1, 1973:

MR. PORTMAN: "I think there certainly is basis for what the defendant says in stating that he believes he had served his 60-day sentence. In fact, at the least he had

served approximately 45 days. At the most he had served 62 days or 60 days and two more days of state custody.

"With regard to the second two points, the failure to—obviously the defendant did not report to the Probation Office and the defendant did not make the Probation Office aware of his current address.

"The question is, should the defendant be violated when there is no indication that the defendant knew that he was required to do so. In other words, can—

"THE COURT: Do you mean we have to spoon-feed him, is that right, Mr. Portman? We have to spoon-feed and tell them, 'Look, little boy, you better go upstairs and talk to the probation officer, because if you don't go up and talk to him you are going to be in violation of probation.'

"Mr. Portman, I am never going to do that to any defendant. If he wants probation from this court, then he ought to know what he is asking for, because probation, as I understand it, is largesse of the court, of the discretion of the trial judge

"MR. PORTMAN: No one is arguing with that, your Honor. No one is arguing with that.

"What I am saying, though, is in this particular situation perhaps he should have been advised by his attorney at the time of what his obligations were. This was a case where there was not a pre-sentence report. The man was not interviewed by a probation officer, where most defendants who are in

duct, Canon 3; *cf.* United States v. Marshall (9th Cir. 1973) 488 F.2d 1169.)

The order revoking the original grant of probation and imposing the new terms of probation is vacated. The cause is remanded for the purpose of determining whether Foster is entitled to any credit on his original federal sentence for the time served in the Orange County jail.

custody—and this man happened to be in custody—are told by the probation officer at that point of their obligations. This man was not. There is no evidence that he was ever told anything by his attorney. He says he was not.

"The Government has not put on any impeachment witness to the contrary. At the time he was sentenced he went immediately back to County Jail. He was not interviewed by anyone from the Probation Office.

"I think we can look to his demeanor. He states that he did not know of his obligations. He had never been on probation before. I feel to violate a man for not obeying a condition of probation when he is unaware and not through an intentional or an intended evasion but through just the circumstances of this particular case is to penalize him, I feel, unfairly.

"I would submit on that, sir.

"THE COURT: Do you want to make a test case of it, Mr. Portman? Is that what it is all about?

"MR. PORTMAN: No, it is not all—

"THE COURT: Is that what it is all about?

"MR. PORTMAN: Sir, no—

"THE COURT: Is that what it is all about? If you want to make a test case of it, you tempt me very much, but I won't punish your defendant, your client, by what you might want to do, Mr. Portman, because I do not think it is the obligation of this court to spoon-feed a defendant.

"MR. PORTMAN: Your Honor, I am not interested—

"THE COURT: I won't do it unless I am told to do it by the Court of Appeals. The only way they can tell me is by sending this case up.

"MR. PORTMAN: I would hope that it would not happen.

"THE COURT: If you want to do that, we can accommodate you and Mr. Foster very easily.

"MR. PORTMAN: Your Honor, I would hope this case would not have to go to the Court of Appeals, and that is the reason—

"THE COURT: To take a position contract [contrary] to that, that this man didn't know that he was on probation and that he should be talking to a probation officer somehow or in some way is totally ridiculous, Mr. Portman, totally ridiculous.

"MR. PORTMAN: Sir, I believe those to be the facts.

"THE COURT: That is totally ridiculous, that any defendant can come in and say, 'I didn't know I was supposed to report to the probation officer when you put me on probation,' like it is some kind of a key to the outside world with no strings.

"Mr. Portman, there are very many strings to probation, sometimes tougher than going to jail, sometimes tougher than going to jail. Every defendant ought to recognize that.

" . . . .

"THE COURT: The court finds the defendant in violation of the probationary conditions heretofore imposed on January 20, 1973. The probationary order of January 20, 1973, is revoked.

"The further execution of the sentence therein imposed is suspended and the defendant is placed on probation for a period of five years on the following terms and conditions:

"That he obey all local, state, and federal laws, and that he comply with the rules and regulations set down for his conduct by the probation officer;

"That he serve the first 180 days in the County Jail.

"So there won't be any question about it, Mr. Portman and Mr. Foster, 180 days. You haven't done 180 days if you stood on your head.

"180 days is to be served by the defendant on consecutive weekends commencing October 6, 1973, at 8:00 a. m., and continuing until October 7, 1973, at 6:00 p. m., and continuing thereafter until the 180 days shall have been served.

"Mr. Portman, if you want to test that, go ahead.

"MR. PORTMAN: Your Honor, I would like to speak briefly to what the defendant has done before sentencing was imposed, if the court would care to hear.

"THE COURT: No, I am not going to be a calculator, either, Mr. Portman.

"MR. PORTMAN: As the court wishes."