ACT UP!/PORTLAND, The Portland Chapter of the AIDS Coalition to Unleash Power; Michael Ambrosino; Richard Dryden; Lori Kohler, et al., Plaintiffs–Appellees,

v.

Kernon BAGLEY, Defendant,

and

Robert Oliverio; Wayne Kauffman; Kenneth Morod, Defendants–Appellants.

No. 90–35888.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1992.

Decided July 24, 1992.

Lori M. Beranak, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Tom Steenson, Steenson & Schumann, Portland, Or., for plaintiffs-appellees.

Before: HALL, O'SCANNLAIN, and LEAVY, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

On a chilly morning in February 1989, members of the Portland Chapter of the AIDS Coalition to Unleash Power ("Act Up!/Portland") gathered at the Federal Building in Portland to protest Food and Drug Administration ("FDA") policies regarding the testing and approval of drugs designed to combat the AIDS virus. Appellees, six men and four women who participated in the demonstration, were arrested, loaded in a van, and taken to the United States Courthouse. There, they were strip searched by United States Marshals.

Appellees filed a complaint against Appellants, the Marshals who ordered and conducted the search, alleging causes of action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for violations of their Fourth Amendment rights. Appellants moved for summary judgment on the *Bivens* action on the ground that they were protected from suit by qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). After the district court denied their motion without comment, Appellants filed a motion for reconsideration. The court denied that motion as well, explaining that, at the time of the search, the law governing strip searches was clearly established. The court ruled that the question of whether, in light of that law, Appellants' decision to conduct a strip search was reasonable was one for the jury.

▪ Pursuant to the collateral order doctrine, we have jurisdiction over interlocutory appeals from orders denying summary judgment on the basis of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *DiMartini v. Ferrin*, 889 F.2d 922, 924 (9th Cir.1989), *amended on other*

*grounds*, 906 F.2d 465 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

# I

## FACTS

Because the district court regarded the question of "reasonable suspicion" as one for the jury, it did not review the facts in the record pertaining to that determination. It appears from the record before us, however, that those facts are essentially not in dispute. At 8:00 a.m. on the morning of February 27, 1989, the demonstration organized by Act Up!/Portland began outside the Federal Building in Portland. Although most of the demonstrators remained outside, Appellees entered the building, bringing the noisy protest to the hallway outside the FDA's office. When they refused to leave, Appellees were arrested by Federal Protective Service officers for creating a public disturbance in violation of 41 C.F.R. § 101–20.305 (1989).[1]

Appellees were escorted down to a loading dock where they were restrained in flexible plastic handcuffs and loaded into Marshals Service vans that were waiting to deliver them to the federal courthouse. As one of the vans pulled away from the building, its driver noticed that the van was tilting to the side. He radioed the Marshals Service Headquarters that his tires were losing air and that he believed they had been slashed.

When the vans arrived at the courthouse, Appellees were taken to a holding facility where several other prisoners, some of whom may have been charged with violent offenses, were being held. Immediately upon their arrival, Deputy Oliverio, the Operations Supervisor, determined that Appellees should be strip searched. He based his decision on two factors. The first was his belief, based on the van driver's report that his tires had been slashed and the fact that Appellees were wearing what Oliverio described as "bulky" winter clothing, that Appellees might be carrying concealed contraband. The second was his concern that if any of the Appellees were carrying dangerous contraband, one of the prisoners the facility was currently holding might obtain that contraband by reaching through the bars of his or her own cell into Appellees' cells. Oliverio knew nothing about what had happened at the demonstration, or about the circumstances of Appellees' arrest.

Initially, Appellees were separated by sex and placed in holding cells. The men were then brought one by one to another cell where they were strip searched by Appellants Kauffman and Morod and another deputy, within view of other male prisoners and Marshals. The women were placed in a "transitory" cell, and after about an hour and forty-five minutes were taken one by one to a private interview room where they were searched by a female deputy before being placed in a "female" cell. Following the strip searches, Appellees were detained until they could be processed. They were cited and released by 12:50 p.m.

# II

## QUALIFIED IMMUNITY

■ We review a district court's denial of a qualified immunity defense de novo. *Baker v. Racansky*, 887 F.2d 183, 185 (9th Cir.1989).

■ When a law enforcement officer asserts qualified immunity from liability for civil rights violations, the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer could have reasonably believed that his conduct was

---

1. Section 101–20.305 provides:
   Disturbances.
   Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.

lawful. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). At the time Appellees were searched, it was clearly established in this circuit that it is unlawful to strip search an arrestee brought to a jail facility on charges of committing a minor offense,[2] unless the officer directing the search possesses "a reasonable suspicion that the individual arrestee is carrying or concealing contraband." *Giles v. Ackerman,* 746 F.2d 614, 617 (9th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985). Reasonable suspicion may be based on "such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Id.* Adhering to the Supreme Court's direction in *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), the *Giles* test accounts for the fact that local jail facilities frequently confront difficult security problems, and balances those facilities' interests in controlling such problems against the privacy interests of arrestees. *See* 746 F.2d at 617.

In this case, the district court misapprehended the qualified immunity analysis. The court recognized that the legal principles governing Appellants' conduct were firmly established at the time of the search, but failed to consider the other factor in the qualified immunity equation—whether, in light of those principles, Appellants could reasonably have believed their actions were lawful. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039. That determination is preliminary to the determination whether Appellants' decision to strip search was in fact based on reasonable suspicion, which the court properly recognized is "a question for the jury as to the merits of the claim."

Furthermore, although Appellees complained that the men were strip searched "in a semi-public area, observed by other deputy marshals and other individuals also in federal custody," the court did not consider whether the search was conducted in a reasonable *manner.* At the time of the search it was clearly established that the Fourth Amendment requires that any strip search be conducted in a reasonable manner, and accordingly that officers must respect arrestees' privacy interests. *See Vaughan v. Ricketts,* 859 F.2d 736, 741 (9th Cir.1988), *cert. denied,* 490 U.S. 1012, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

■ A line of cases decided by this court holds that the determination upon which qualified immunity hinges—whether the officer could reasonably have believed he was acting properly in light of established principles of law—is one for the jury. *See, e.g., Kennedy v. Los Angeles Police Dep't,* 901 F.2d 702, 706 (9th Cir.1989); *Schlegel v. Bebout,* 841 F.2d 937, 945 (9th Cir.1988). This view was expressly rejected by the Supreme Court in *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). The Court admonished that our approach, according to which the qualified immunity question went to the jury unless there was but one reasonable conclusion a jury could reach regarding the reasonableness of the officer's belief, ignored the fact that qualified immunity " 'is an *immunity from suit* rather than a mere defense to liability.' " *Id.* 112 S.Ct. at 536 (quoting *Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2815). Immunity, the Court held, "ordinarily should be decided by the court long before trial." *Id.* at 537, 105 S.Ct. at 2821.

We interpret *Bryant* to hold that the question of whether a reasonable officer could have believed his conduct was proper under established law is a question of law that must be determined *by the district court* at the earliest possible point in the litigation. Where the facts underlying the qualified immunity determination are not in dispute, the determination should be made at summary judgement, and the court is obliged to make every effort to develop the

---

**2.** At the time of this search, the maximum penalty for violating 41 C.F.R. § 101–20.305 was a fine of $50 or imprisonment of not more than 30 days or both. *See* 40 U.S.C. § 318c (1988); 41 C.F.R. § 101–20.315 (1989). Because the maximum penalties prescribed by these provisions are so small, we have described violations of 41 C.F.R. § 101–20.3 as "petty." *See United States v. Stansell,* 847 F.2d 609, 611–612 (9th Cir.1988).

record to the extent necessary to make the determination at that stage. If a genuine issue of fact exists preventing a determination at summary judgment, the court may permit the case to proceed to trial and make the qualified immunity determination after the facts have been fully aired in the courtroom.

We hold, therefore, that the district court erred by denying Appellants' motion for summary judgment without determining whether a reasonable officer in Appellants' position could have believed, in light of clearly established legal principles, that his conduct was lawful. We REVERSE the court's order denying Appellants' motion for summary judgment, and REMAND the case to determine whether there exists a genuine issue of material fact underlying the qualified immunity question. If, as appears from the record before us, there is no such issue, then the court should determine as a matter of law whether a reasonable officer in Appellants' position could have thought that the circumstances gave rise to a reasonable suspicion that Appellees were carrying contraband, and if so, that the manner in which they were searched was reasonable. If, and only if, it answers either of these questions in the negative, the case should go to the jury to determine whether the searches violated the Fourth Amendment. If the court finds that a genuine issue of underlying fact does exist, it may postpone the qualified immunity determination until the facts have been developed at trial. REVERSED and REMANDED.