UNITED STATES of America,
Plaintiff–Appellee,

v.

Marcellus Aaron ELDER,
Defendant–Appellant.

No. 00–10143.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2001.

Filed June 7, 2002.

Robert V. Vallandigham, Jr., San Francisco, CA, for the appellant.

Patrick D. Robbins, Assistant U.S. Attorney, San Francisco, CA, for the appellee.

**520**

Before: PREGERSON, FERGUSON and HAWKINS, Circuit Judges.

## AMENDED OPINION *

MICHAEL DALY HAWKINS, Circuit Judge.

■ Appellant Maurice Elder ("Elder") seeks review of his conviction and sentence on cocaine possession and distribution charges. With respect to his conviction, Elder argues that he was denied due process of law when the district court had lead defense counsel removed from the courtroom, especially given the nature of that removal. A careful examination of the record, however, reveals a persistent pattern of surly, disruptive and contemptuous behavior by a defense counsel with a history of antagonizing judges.[1] Over much of the trial and immediately prior to her removal, counsel was repeatedly warned about yelling at the court and making sarcastic remarks.

Elder argues that the sight of his lawyer being led off in handcuffs must have prejudiced the jury against him. The record is clear, however, that the district court did not order the handcuffing. When co-counsel for Elder indicated an unwillingness to proceed and asked that the jury be excused, the court complied and granted a one-hour recess. Following the recess, lead counsel returned to the courtroom and the court effectively cleared the air by acknowledging that the objection she had made was factually correct and then allowed her to address the point at length. Counsel then apologized to the court and later to the jury, stating that while she may have been correct in her objection, "I was wrong to argue with the court." At the conclusion of the evidence, the district court instructed the jury that they were not to consider the incident in their deliberations.

Although in almost all other circumstances we would hold that removing a defense attorney from the courtroom in handcuffs and later requiring her to apologize to the jury while the judge reprimanded her for her behavior is "so inherently prejudicial as to pose an unacceptable threat" to a fair trial, *Maiden v. Bunnell*, 35 F.3d 477, 482 (9th Cir.1994), in the unique circumstances of this case, we conclude that an extremely narrow, highly-fact-intensive exception to the general rule is required. Given the extraordinary history of counsel's insistence on repeatedly disrupting court proceedings not just in this case but others, plus the combined effect of the overwhelming evidence establishing Elder's guilt, the nature of the specific curative instruction given to the jury to mitigate any prejudice resulting from counsel's removal from the courtroom, and the fact that Elder had another attorney representing him as well who, as far as the jury was aware, complied with all court and ethical responsibilities and was not the subject of any reprimand, we are unable to conclude that, in the unique circumstances of this case, Elder's due process rights were violated.

■ We also reject Elder's claims of sentencing error. The district court did not err in applying a two-level enhancement for possession of a firearm in the commission of a drug offense when Elder failed to prove that it was "clearly improbable" that the weapon he possessed was connected to the offense. *See United*

* Publication is pursuant to Ninth Circuit Rule 36–2(g).

1. "In our collective 97 years in the legal profession, we have seldom seen such unprofessional, offensive and disruptive conduct by an attorney in a court of law." *People v. Chong*, 76 Cal.App.4th 232, 90 Cal.Rptr.2d 198, 207 (1999).

*States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989).

■ Further, because the record supports the conclusion that there were five or more participants in the conspiracy, there was no error in the finding that Elder occupied a leadership role. And, because Elder's enhanced sentence was not extremely disproportionate to his original sentence, there was no error in the application of a preponderance of the evidence standard to these findings. *United States v. Johansson*, 249 F.3d 848, 854–55 (9th Cir.2001). Finally, because Elder's sentence was below the statutory maximum, there was no violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *United States v. Hernandez–Guardado*, 228 F.3d 1017, 1027 (9th Cir.2000).

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

This case is remarkable for at least three reasons, and for these reasons, I must dissent.

First, Elder's trial counsel, Maureen Kallins ("Kallins"), was physically brutalized in front of the jury for correctly insisting that the District Judge had issued a prior evidentiary ruling in her client's favor. However, the prosecutor who violated the prior ruling was not even reprimanded.

Second, in explaining the treatment of Kallins, the District Judge stated before the jury that she deserved what she got because she was "trashing the United States." In other words, she was unpatriotic.

Third, the majority cites to a California state court decision as support that defense counsel is a bad person, with a history of "surly, disruptive, and contemptuous behavior." Majority Op. at 520. In doing so, the majority ignores the fact that the criticism of defense counsel throughout her career may be caused in part by anti-feminism within the legal community.[1] In particular, some in the legal profession may be more offended by aggressive and combative litigation tactics from a female attorney than from her male counterparts.[2] Rather than recognizing this possibility or ignoring others' condemnation of her (as it should), the majority joins in and adds to the "black cloud of alleged past misconduct hanging over her."[3]

It is important to remember that this case is not about the rights of an attorney. It is a case about the constitutional rights of a defendant in a criminal trial. Contrary to the majority's assertions, it matters not that the attorney may have a history of bad behavior and of sanctions imposed by multiple courts. It matters not that she prides herself in pushing judges to the extreme. What matters is that the District Judge's reaction to the attorney prejudiced her client, depriving him of a fair trial. The client should not be punished because of the Judge's desire to punish his lawyer.

---

1. *See* Maura Dolan, *Scrappy Lawyer Inspires Awe, Ire; Maureen Kallins' combative courtroom style has made her beloved by defendants and disdained by prosecutors and judges. Contempt citations and financial woes take a toll*, L.A. Times, April 21, 2001, at A1.

2. This disparity has been the subject of much discussion within the legal community. *See, e.g.*, Elizabeth A. Delfs, *Foul Play in Courtroom: Persistence, Cause and Remedies*, 17 Women's Rts. L. Rep. 309, 313 (1996); Mona Harrington, *Women Lawyer: Rewriting the Rules* 124, 129–39 (1995); *The Preliminary Report of the Ninth Circuit Gender Bias Task Force* 60 (1992).

3. *See* Dolan, *supra*, at A1 (statement by her attorney Roger Lowenstein).

Even during the turbulent nine months of trial when eleven communist party leaders were convicted in the early–1950's and when attorneys allegedly attempted to destroy the District Judge's health, District Judge Medina chose not to institute contempt proceedings against the attorneys until after the jury had reached a verdict and was discharged. *See Sacher v. United States,* 343 U.S. 1, 3, 72 S.Ct. 451, 96 L.Ed. 717 (1952); *Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1950). In *Sacher,* the Supreme Court stated: "To summon a lawyer before the bench and pronounce him guilty of contempt is not unlikely to prejudice his client." 343 U.S. at 10, 72 S.Ct. 451. Even if the judge does so outside the presence of the jury, "only the naive and inexperienced would assume that the news of such action will not reach the jurors." *Id.* Furthermore, if the judge pronounced the lawyer guilty on the contempt charge before the trial was over, "it would add to the prejudice." *Id.*

The enormity of what was done to defense counsel before the jury was so great and the prejudicial impact it caused so clear that Elder is constitutionally entitled to a reversal of his conviction and a new trial.

## I

At trial, Maureen Kallins ("Kallins") vigorously defended her client, Elder, to the point of repeatedly interrupting the District Judge. In the exchange leading up to Kallins' handcuffing, the District Judge did not recall an earlier evidentiary ruling, by which he limited the scope of a Government agent's testimony to matters relating to telephone records. The issue arose when the Government asked the agent a question about his success in locating Luis Salinas, a material witness. In the presence of the jury, Kallins correctly reminded the Judge of his previous oral ruling limiting the scope of the testimony. The following exchange regarding Kallins' objection then occurred between the District Judge and Kallins.

Kallins: Objection. Objection. We had a motion in limine and a motion to present the witness for charts, phone charts. That was it.

\* \* \*

Court: I don't recall. Let me look at the rulings that I've ruled on.

(Pause in the proceedings.)

Court: The only rule that dealt with Salinas—

Kallins: Your Honor, we had a pretrial motion as to re-calling Agent LaFreniere. We argued it orally. That—I objected to them putting Agent LaFreniere on twice. The Government said they were putting him on to put in certain phone charts. We discussed this orally. It is recorded in the record in this case.

The ruling of the Court was that they [sic] would not be any additional subjects broached by the prosecution, that they would put him on for the purposes of putting on the phone charts, that they would not do as I suspected they would and argue that they—

Robbins: [4] I object to counsel's speaking objections. I'd be glad to respond if the Court likes.

Kallins: And I object to the process.

Court: Now, stop this. I won't have it in my Court. If you—

\* \* \*

Court: You be quiet when I'm ruling. You interrupt me every time I make a

---

4. Patrick D. Robbins was one of the Assistant United States Attorney assigned to the case.

ruling. You create chaos in this Court. And we have a system in the United States District Courts for trying cases.

Kallins: We have a constitution in this Country.

Court: Don't you yell at me again, because—

Kallins: Well, I would appreciate the same kindness from the Court.

Court: All right. That's the—You're in summary contempt of court. And at the close of this trial, you will spend some days in custody of the United States Marshal.

And if you continue this kind of conduct, it will start in about right now. And just stop it.

I looked through my notes. I find no such ruling. If you want to make your—an objection like that, you can make a reference to the transcript, and you can make a written motion.

Kallins: But they can proceed?

Court: And your motion—your objection is overruled.

Kallins: Thank you Your Honor. How very fair of you.

Court: You're yelling at me.

Kallins: Very—in accordance with the Constitution of the United States.

Court: You're yelling at the Court.

Kallins: You're yelling at me.

Court: —No manners. You don't understand what it is to be—

Kallins: Oh, I understand.

Court: —To be a lawyer in a court.

The Government continued to examine the agent on matters exceeding the scope of testimony previously authorized by the Court. Kallins continued to object. The District Judge then stated, "Mr. Marshal, kindly take her upstairs. This is necessary in order to conduct an orderly trial. And keep her there until the next recess. Maybe she can think about this a little bit. I'm outraged." In the presence of the jury, the Marshal removed Kallins' jewelry, handcuffed her hands behind her back, and escorted her from the courtroom.

The District Judge then directed Kallins' co-counsel, Charles Gretsch ("Gretsch"), to proceed. Gretsch stated that Elder did not wish to proceed without Kallins.[5] In the presence of the jury, the Judge responded:

Well, she doesn't know how to behave herself in a courtroom. It's like having a bunch of children, screaming and crying and yelling at the top of her voice in total disrespect for the Court. She doesn't—I won't have it in my court. She's trashing the United States, and that doesn't happen in my Court.

The prosecutor then asked the District Judge to excuse the jury, and the Judge agreed. The Judge granted a one-hour recess for the Court. The Judge also agreed to the prosecutor's request for an opportunity to research whether the proceeding could continue in Kallins' absence. In addition, the Judge suggested to Kallins' co-counsel that it was possible Kallins "needs some help," and offered to assist in finding help for her. The Judge stated that he had not experienced anything like Kallins' behavior in his 25 years on the bench.

The District Judge ultimately decided that Kallins' objection was well-founded

---

**5.** This decision by Elder made sense. Kallins, not Gretsch, had prepared the cross-examination for this particular witness. In order to conduct the cross-examination, Kallins needed to be present for the direct examination.

In addition, as discussed later, Kallins has the reputation for winning difficult cases, thus, it is not surprising that Elder would want her present.

and that he had indeed made a prior ruling on the issue. However, the Judge did not admonish or sanction the Assistant United States Attorney who chose not to follow the Judge's prior order and pursued an inappropriate line of questioning. Ironically, the one who had violated the Judge's previous order escaped punishment, whereas the one who called the violation to the Judge's attention was held in contempt and treated like a violent criminal. Upon releasing her from custody, the Judge instructed Kallins to apologize to him and the jury.[6] Once the jury returned, she apologized to the Court and the jury and stated that, she "was right factually at least somewhere, but ... was wrong to argue with the Court" in the manner that she did.

At the close of trial, the District Judge gave limiting instructions to the jury. He informed the jury that "[a]ttorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. And you should not be influenced by the objection or by the Court's ruling on it." He also told the jury that it is "the duty of the Court to admonish an attorney who out of zeal for his or her cause does something which the Court feels is not in keeping with the rules of evidence, procedure, or decorum." He instructed the jury:

> You are to draw absolutely no inference against the side to whom an admonition of the Court or any other sanction imposed by the Court is made....

> And likewise, any court-imposed sanctions against an attorney is not intended

to reflect the Court's opinion on the merits of the evidence and may not be considered by you in any way in deciding the case.

You and you alone are the sole judges of the facts.

The jury found Elder guilty of two drug-related crimes in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. He was sentenced to a 168–month term of imprisonment.

## II

### A. Due Process Right to a Fair Trial

When the United States Marshal removed Kallins' jewelry, handcuffed her hands behind her back, and removed her from the courtroom in the presence of the jury, Elder's due process right to a fair trial was violated.

■ A violation of due process occurs when a District Judge creates a "pervasive climate of partiality and unfairness," which prejudices the defendant and thereby deprives him of a fair trial. *Duckett v. Godinez,* 67 F.3d 734, 740 (9th Cir.1995) (internal quotation marks and citations omitted); *see also United States v. Foster,* 500 F.2d 1241, 1244 (9th Cir.1974). "[A] trial court must be ever mindful of the sensitive role it plays in a jury trial and avoid even the appearance of advocacy or partiality." *Kennedy v. L.A. Police Dep't,* 901 F.2d 702, 709 (9th Cir.1990) (citation and internal quotation marks omitted);[7] *see also United States v. Hickman,* 592 F.2d 931, 933 (6th Cir.1979) ("[G]reat care must be taken by a judge to 'always be calmly

---

6. The majority creates the impression that Kallins apologized to the Court and jury completely on her own volition. Majority Op. at 520. However, the majority fails to mention that the District Judge ordered her to apologize to the Court and the jury once the jury had been reassembled.

7. In *Act Up!/Portland v. Bagley,* 971 F.2d 298, 301 (9th Cir.1992), we recognized that *Kennedy* had been implicitly overruled on other grounds by *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

judicial, dispassionate and impartial.' ") (citation omitted).

In this case, the conduct of the District Judge created a "pervasive climate of partiality," which deprived Elder of a fair trial. *Duckett*, 67 F.3d at 740. The Judge ordered the U.S. Marshall to remove defense counsel from the courtroom in the presence of the jury. The jury witnessed the spectacle of defense counsel having her jewelry removed and then being forcibly ejected from the courtroom, with her hands cuffed behind her back. The sight undermined the jury's trust in the attorney's arguments and prejudicially influenced its perception of the defendant. The jury surely perceived Kallins as someone so violent that she had to be handcuffed and removed. In contrast to prior cases in which we have not found a due process violation, the bias resulting from the handcuffing in this case is "so virulent . . . as to result in material harm to [the] defense." [8] *United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir.1985); *cf. Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir.1999) (noting that, "[b]ecause visible shackling of the defendant during trial is so likely to cause the defendant prejudice, it is permitted only when justified by an essential state interest specific to each trial.").

The District Judge's statements during this incident also added to the prejudice created by the handcuffing and removal of Kallins in the presence of the jury. Ordinarily, a jury might understand a judge's curt remarks to an attorney as part of the normal course of litigation. *See, e.g., United States v. Poland*, 659 F.2d 884, 892–94 (9th Cir.1981). However, in this case, the District Judge's statements, when viewed in conjunction with the handcuffing, were beyond the normal course of litigation and "revealed an attitude which hardly reflected the restraints of conventional judicial demeanor." *Foster*, 500 F.2d at 1244. The District Judge stated that he was "outraged" at defense counsel's behavior, that defense counsel "doesn't know how to behave herself in a courtroom," and that defense counsel was "trashing the United States, and that doesn't happen in my Court." All of these statements were made in the presence of the jury. These comments heightened the prejudice to Elder, which had been inflicted from the handcuffing of his attorney.[9] *United States v. Nazzaro*, 472 F.2d 302, 311–13 (2d Cir.1973) (finding that judge's "acrimonious exchanges with defense counsel," in the jury's presence prejudiced defendant and, thus, required a new trial). Thus, the handcuffing and removal of defense counsel and the related comments by the District Judge, all of which occurred in the

---

**8.** The majority emphasizes that the District Judge did not order the U.S. Marshall to handcuff Kallins. Nonetheless, Kallins was handcuffed by an officer of the Court who was acting on the order of the District Judge. Moreover, whether it was the District Judge who specifically ordered the handcuffing or the Marshall who interpreted the order as such, the prejudicial effect on Elder still remains.

**9.** We have recognized that " '[t]he standard for reversing a verdict because of general judicial misconduct during the trial is rather stringent,' " especially when the judicial misconduct is directed toward the defense attor-

ney rather than the defendant. *Kennedy*, 901 F.2d at 709; *cf. United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir.1985) (discussing the more stringent standard in the context of motion to disqualify the trial judge). Nevertheless, Elder's situation presents the extreme case in which "bias for or against an attorney can . . . result in bias toward the party." *Burt*, 765 F.2d at 1368 (citations omitted); *see also United States v. Kelley*, 314 F.2d 461, 464 (6th Cir.1963) (holding that the trial judge's threat to hold the defendant's lawyer in contempt in the presence of the jury was prejudicial and deprived the defendant of a fair trial).

presence of the jury, created a "pervasive climate of partiality and unfairness," which violated Elder's due process rights. *Duckett,* 67 F.3d at 740.

It is worth noting that the District Judge did not exercise his contempt power throughout trial, despite Kallins' repeated interruptions, until this particular exchange. Only when Kallins corrected him, revealing his inability to recall his prior order, did the Judge become "outraged" and order that she be arrested and removed from the courtroom. After Kallins was removed, the Judge explained in front of the jury that he had to remove her because she acted "in total disrespect for the Court" and was "trashing the United States." In viewing the sequence of events, it is clear that Kallins was not held in contempt because of any disruptive conduct in this case (or any other case). Rather, she was being punished for her criticism and correction of the District Judge's ruling. As stated by Justice Frankfurter in *Sacher,* "[t]he power of contempt . . . is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge." [10]  343 U.S. at 30, 72 S.Ct. 451 (Frankfurter, J., dissenting).

The majority relies on *United States v. Garcia,* 924 F.2d 925 (9th Cir.1991), for the proposition that temporal removal of defense counsel neither interferes with the right to counsel nor materially influences a jury. *Id.* at 927–28 (noting that the expulsion of defense counsel in the presence of the jury cannot be condoned, but finding that the temporary removal in that case did not influence "in any materially adverse way the jury's perception of the defendant"). Its reliance is misplaced. The facts of *Garcia* are readily distinguishable, and these factual distinctions further support the conclusion that Elder was prejudiced.

Nothing in the facts of *Garcia* suggests that the lawyer's objections were valid or that the trial judge was mistaken. *Id.* Here, in contrast, the District Judge had Kallins removed after she correctly reminded him of his earlier ruling. More importantly, counsel in *Garcia* was never handcuffed, and the judge in *Garcia* did not proceed on a personal tirade regarding counsel. *Id.* The difference is substantial. Treating the lawyer as a violent criminal creates much stronger prejudice than simply having the lawyer escorted from the courtroom. Further, the suggestion that Kallins was acting like a child (i.e., "It's like having a bunch of children, screaming and crying and yelling at the top of her voice in total disrespect of the Court") and was being unpatriotic (i.e., "She's trashing the United States") readily distinguish this case. Here, the jury was undoubtedly influenced by the Judge's comments and actions because they created a "pervasive

---

**10.**  The majority in *Sacher* also recognized this need for closer scrutiny in circumstances where issuance of the contempt order is deeply intertwined with the judge's own pride. Specifically, the Court stated:

That contempt power over counsel, summary or otherwise, is capable of abuse is certain. Men who make their way to the bench sometimes exhibit vanity, irascibility, narrowness, arrogance, and other weaknesses to which human flesh is heir. Most judges, however, recognize and respect courageous, forthright lawyerly conduct. They rarely mistake overzeal or heated words of a man fired with a desire to win, for the contemptuous conduct which defies rulings and deserves punishment. They recognize that our profession necessarily is a contentious one and they respect the lawyer who makes a strenuous effort for his client.

343 U.S. at 12, 72 S.Ct. 451.

climate of partiality or unfairness." *Id.* at 928 (internal quotation marks and citation omitted). The majority's reliance on *Garcia* is, therefore, unavailing.

## B. Curative Instructions

The majority indicates that the Judge's instructions to the jury sufficiently cured any resulting prejudice, relying on *Poland.* However, in *Poland,* this Court viewed the prejudice to the defendant as negligible or nonexistent; thus, curative instructions sufficed in that case. 659 F.2d at 894 (holding that curative instructions were sufficient in light of the overwhelming evidence of guilt and the fact that the judge's misconduct was merely expressions of impatience and irritation with defense counsel).

In contrast, when the courtroom prejudice is particularly egregious, it creates "one of those cases where the prejudice could not be removed by curative instructions." *United States v. Bland,* 908 F.2d 471, 473 (9th Cir.1990); *see also Hickman,* 592 F.2d at 936; *Nazzaro,* 472 F.2d at 312–13 ("[S]uch admonitions may offset [only] brief or minor departures from strict judicial impartiality.") (internal quotations omitted). As discussed above, the removal of defense counsel in handcuffs and the Judge's statements certainly im-

pacted the jury's perception of Elder. Thus, the Judge's instructions to the jury could not and were not sufficient to cure the prejudice.[11]

## C. Harmless Error

The majority also implies that any error was harmless, given the overwhelming evidence of Elder's guilt. It is true that in cases of minimal or negligible prejudice, we have considered the possible prejudice "in light of the evidence of guilt." *United States v. Bennett,* 702 F.2d 833, 835 (9th Cir.1983); *see also Poland,* 659 F.2d at 894. However, in more egregious cases, we have generally remanded for a new trial without assessing the evidence of guilt. *See, e.g., Bland,* 908 F.2d at 473 (holding that the court's comments to the jury venire was not a harmless error and remanding for a new trial); *Foster,* 500 F.2d at 1244–45.

Reversal of such error is mandated because it constitutes a "structural defect," which is not subject to the harmless error rule. *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). A structural defect affects "the framework within which the trial proceeds," pervading all of the evidence and leaving no untainted evidence for the appellate court to review.[12] *Id.* at 309–310,

---

**11.** The majority asserts that "the nature of the specific curative instruction given to the jury to mitigate any prejudice resulting from counsel's removal" was a "unique circumstance," which excepted this case from the general rule of inherent prejudice. Maj. Op. at 521. As discussed later, there is no exception to this general rule. Furthermore, even assuming that instructions could cure the inherent prejudice, the instructions given in this case were clearly insufficient. The District Judge's vague instruction that the jury was not to draw any inferences against a side to whom an admonition or sanction was imposed by the Court did not address the severity of his statements that Kallins was "disrespecting"

the Court, "trashing" the United States, and acting like a child.

**12.** In *Fulminante,* the Supreme Court distinguished between cases that involve "trial error," in which the harmless error rule applies, and cases that involve fundamental "structural defects", in which the rule does not apply. 499 U.S. at 307–10, 111 S.Ct. 1246; *see also Hegler v. Borg,* 50 F.3d 1472, 1476 (9th Cir.1995). The Court defined "trial errors" as "error[s] which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable

111 S.Ct. 1246. As the Supreme Court explained in *Fulminante*, "structural defects in the constitution of the trial mechanism ... defy analysis by harmless-error standards." *Id.* at 280. " 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " *Id.* at 310, 111 S.Ct. 1246 (quoting *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). By way of example, the Court noted that "[t]he entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of judge who is not impartial." *Id.*

In this case, the District Judge's misconduct constitutes a structural defect. The entire conduct of the trial in this case was affected by the forcible removal of defense counsel in handcuffs and the Judge's inappropriate comments in the presence of the jury. The jury was influenced by factors outside the competing arguments and evidence, leaving no untainted evidence for us to consider separately on appellate review.

Allowing Elder's conviction to stand not only affects this individual defendant, it also undermines the integrity of our judicial process by depriving the jury of its indispensable role. *See Carella v. California*, 491 U.S. 263, 270, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (Scalia, J. concurring) (noting that reliance on evidence of guilt regardless of the severity of the error "deprives the jury of its factfinding role").

> [I]t is not the appellate court's function to determine guilt or innocence. Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out. Appellate judges

cannot escape such impressions. But they may not make them sole criteria for reversal or affirmance. Those judgments are exclusively for the jury, given always the necessary minimum evidence legally sufficient to sustain the conviction unaffected by the error.

*Kotteakos v. United States*, 328 U.S. 750, 763–64, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (citations omitted); *see also Bollenbach v. United States*, 326 U.S. 607, 615, 66 S.Ct. 402, 90 L.Ed. 350 (1946). To safeguard the sacred role of the jury in our judicial system, appellate courts must consider not only the jury's ultimate verdict, but also the process by which it reached its decision. *Sullivan v. Louisiana*, 508 U.S. 275, 280, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (discussing the inapplicability of the harmless error standard to certain constitutional errors); *see also Fulminante*, 499 U.S. at 296, 111 S.Ct. 1246 (requiring the prosecution to demonstrate that the error did not "contribute to" the conviction).

In the present case, we cannot know the degree of influence that the forcible removal of Kallins in handcuffs and the ensuing inappropriate comments by the Judge had on the jury's impressions of Elder and the credibility of his defense. However, it is clear that, after witnessing these events, no part of the jury's decision-making process was free of prejudice. *See United States v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir.1982) (holding that the defendant was not denied due process by an unfair trial when the vast majority of comments by the trial judge were *not* before the jury). Accordingly, this structural defect requires reversal of Elder's conviction.

### III

The majority states that ordinarily what was done to defense counsel was " 'so

doubt." *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246.

inherently prejudicial as to pose an unacceptable threat' to a fair trial," but that"the unique circumstances of this case," created an exception to the rule. Maj. Op. at 520 (quoting *Maiden v. Bunnell,* 35 F.3d 477, 482 (9th Cir.1994)). Thus, although recognizing that what occurred here would generally constitute structural error, the majority chooses to hold otherwise because of the"unique circumstances" of this case. Maj. Op. at 520. However, nothing in our case law supports the creation of such an exception.

Moreover, the primary unique circumstance relied on by the majority is "the extraordinary history of counsel's insistence on repeatedly disrupting court proceedings not just in this case but others." Maj. Op. at 520. Before addressing the majority's argument, it must be emphasized that Elder, not his attorney, was on trial. We should only be examining Elder's past conduct, not defense counsel's. In addition, we should not be punishing the client for the alleged misdeeds of his attorney. This is particularly true here because there was no actual misdeed. In this case, the prejudice arose because the District Judge's reaction to Kallins' objection, involving a prior evidentiary ruling that the District Judge could not remember. Thus, this "unique" circumstance supports the showing of prejudice to Elder.

With regard to the conduct of Kallins in other court proceedings, her past conduct does not warrant her being arrested, stripped of jewelry, handcuffed, and called childish. In fact, others have described her past conduct quite differently. A law school dean stated, "Maureen is representative of a dying breed—that is, a lawyer who is just an unbelievably hellcat fighter for her clients." [13] A reporter described her as "verbal, funny, vivid and dramatic" in court.[14] Finally, a federal public defender stated that Kallins has had some "amazing results" and that she does things that "make the jury take more note of the case, perhaps think more critically of the case.... What she is good at is courtroom tactics in cases that are hard if not impossible to win[.]" [15]

These observations call into question whether Kallins' prior conduct can simply be written off as "surly, disruptive and contemptuous." Maj. Op. at 520. Rather, it appears that Kallins could also be described as a formidable attorney who passionately represents her clients often successfully. These observations also raise doubt regarding the majority's assertions that Elder could have proceeded without co-counsel and that he would have been found guilty anyway. Maj. Op. at 520 (stating that "the fact that Elder had another attorney representing him" and "the overwhelming evidence establishing Elder's guilt" were two "unique circumstances," which eliminated the inherent prejudice). Elder wanted to proceed with Kallins, a lawyer who had the reputation of winning "cases that are hard if not impossible to win[.]" Thus, her past conduct, including her ability to win difficult cases supports the argument that what was done

---

**13.** Dolan, *supra,* at A1 (statement by Golden Gate Law School Dean Peter G. Keane).

**14.** *Id.* In the article, the reporter described one situation in which Kallins began mimicking the witness during her closing argument. After the trial judge told her to stop, he stated, "That may be the way lawyers in New York do it, but out here we have rules." She

replied, "I don't know what you mean about lawyers in New York. I hope it wasn't intended to be anti-Semitic." *Id.* (interview with Arthur Wachtel, a public defender in Marin County).

**15.** *Id.* (statements by Deputy Assistant United States Public Defender Lawrence B. Kupers).

to Kallins was "so inherently prejudicial as to pose an unacceptable threat to a fair trial" for her client. *Maiden*, 35 F.3d at 482.

In sum, the circumstances cited by the majority cannot justify the creation of an exception to the general rule of structural error. Here, what was done to defense counsel was inherently prejudicial, and Elder deserves a new trial.

## IV

Through limiting instructions, the District Judge made an effort to minimize the prejudice that he caused. No limiting instructions, however, could remedy the prejudicial effect of his egregious misconduct. It is beyond reason to conclude that Elder has not been prejudiced when his attorney was treated like a dangerous criminal, who needed to be handcuffed and removed from the courtroom, and was declared childish and unpatriotic. Because Elder has been deprived of his constitutional due process right to a fair trial, "[t]he only remedy for the prejudice ... here is to reverse the conviction and grant him a new trial." *Nazzaro*, 472 F.2d at 313.

The conviction of the defendant should be reversed, and the case should be remanded for a new trial.